## Moore Appeal.

Argued June 10, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Miriam L. Gafni,* Assistant Defender, with her *Paula S. Gold,* Assistant Defender, and *Vincent J. Ziccardi,* Acting Defender, for appellants.

*James D. Crawford,* Deputy District Attorney, with him *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., September 18, 1970:

Appellants were adjudged delinquent in the Juvenile Court of Philadelphia County, and subsequently placed on probation. In each of their cases, a timely petition for rehearing was filed alleging that errors of law and/or fact were committed and the order of the court was improvidently made. Each petition for a rehearing was denied. The question presented on appeal is whether, pursuant to the Juvenile Court Act, a rehearing is required after an order of probation.

Section 15 of the Juvenile Court Act is concerned with rehearings following adjudications of delinquency. The statute states in pertinent part: "Within twenty-one (21) days after the *final order* of any judge of the juvenile court, *committing or placing* any dependent, neglected or delinquent child, such child *shall, as a matter of right,* by his or her parent or parents or next friend, *have the right to present to the court a petition to have his or her case or cases reviewed and reheard,* if, in the opinion of such parent . . ., an error of fact or of law, or of both, has been made in such proceedings or final order, or if the said order has been improvidently or inadvertently made. *Upon the presentation of such petition, the court shall grant such review and rehearing as a matter of right. . . ."* Act of June 2, 1933, P. L. 1433, §15, 11 P.S. §257 (emphasis added.). That is, rehearing in a juvenile case is not discretionary following a final order of commitment or placement. In the interests of assuring the most appropri-

ate disposition, an adjudicated juvenile is entitled as a matter of right to bring forth any further considerations he may have.

More narrowly expressed, the issue here is whether an order of probation is a final order of commitment or placement. The orders which a hearing judge may make are set out in section 8 of the Act, as amended, and comprehend a wide variety of custodial situations. He may allow the child to remain in the home, or place him under the guidance of a reputable citizen, subject to the supervision of a probation officer; or he may commit the juvenile to a suitable institution, industrial training school, or reformatory. The wording and structure of the Act indicate that the legislature intended no different procedure with regard to each of the listed dispositions. There is no reason why any of the choices of disposition available to the hearing judge is any less a "final order" than the others for the purposes of a section 15 rehearing. All the orders, including probation, constitute some interference with the adjudicated youth's civil liberty.

In addition, section 16 of the Act uses similar language with regard to rehearings. It provides in pertinent part: "If, at any time after the *final order* of any juvenile court *placing or committing* any dependent, neglected or delinquent child, a change of circumstances has taken place which, in the opinion of the parent . . ., warrants the revocation or modification of such *final order,* such child *shall . . . have the right* to file a petition in such court asking for a revocation or modification of such final order.

*"It shall be the duty* of such courts or judges to give a full and proper hearing on such petitions." (emphasis added.) An order "placing" a juvenile on probation would obviously be subject, in certain circumstances, to "revocation or modification" under this sec-

tion. *Redding Appeal,* 184 Pa. Superior Ct. 352, 134 A.
2d 689 (1957). The relevant words "committing or
placing" after "final order" are found in both sections
15 and 16, and they should be construed identically in
both. Accordingly, the most reasonable construction
of section 15 of the Act is that a rehearing is required
as of right after an order of probation.

The court below relied on language in *Common-
wealth v. McIntyre,* 435 Pa. 96, 98, 254 A. 2d 639, 641
(1969), that " 'committing or placing' as used in [§15
of the Act] envisions an order of the juvenile court
judge 'placing' the juvenile in a home or institution".
However, that case is inapposite here. *McIntyre* in-
volved a charge of murder against a juvenile, and in
such situations the hearing judge in effect sits as a
committing magistrate. As Justice ROBERTS clearly enun-
ciated, the result of the judge's order was that the case
"has merely been certified to the district attorney to
be transferred to the criminal court . . . . The judge's
only responsibility in a case involving felonious homi-
cide is to determine if the Commonwealth has made
out a prima facie case in the juvenile court proceed-
ings; once this has been done, the juvenile *must* be held
for further proceedings in the criminal courts." Id.,
at 98, 254 A. 2d at 641 (original emphasis). Clearly
*McIntyre* was not concerned with the problem of re-
hearing following an order of probation.

The general policy of the law in juvenile cases was
expressed in *Jenkins Appeal,* 210 Pa. Superior Ct. 501,
504, 505, 234 A. 2d 49, 51, 52 (1967), that "the lower
court *must* grant review and rehearing when requested
within twenty-one days of the final order . . . . This
provision was not designed simply to afford the appel-
late courts an adequate record for review. It was also
designed to assure that the utmost care and considera-
tion would be given by the Courts in any proceeding

affecting a juvenile. The Court's special responsibility in dealing with juveniles demands careful consideration to assure that harm will not result from an unwise adjudication. It is this fundamental, moral obligation which underlies and supplies the true basis for the rehearing provisions contained in §15 of the Juvenile Court Law." (original emphasis)

Probation is "punishment" for double jeopardy purposes, and "[i]t is unquestionably a restriction on the defendant's freedom and a deprivation of his liberty within the meaning of the Fourteenth Amendment." *Commonwealth v. Vivian*, 426 Pa. 192, 200, 231 A. 2d 301, 305 (1967). While on probation the juvenile is subject to the control of the court and the probation officer until he is twenty-one years old, unless sooner discharged. Probation subjects the juvenile to physical restraints on his freedom in that he may not leave the area without permission and must systematically report to a probation officer. A violation of probation may result in institutionalization even if there is no other act of delinquency.

Whether the juvenile is merely placed on probation and allowed to stay in his own home or sent off to a reformatory, the basic decision is that he has been adjudicated delinquent. The stigma will remain with him. Thus, the rehearing is also to carefully reconsider the adjudication, not just the disposition.

The Commonwealth argues that juvenile probation is not "legally damaging" because no civil or criminal disability results from an adjudication. However, a prior adjudication of delinquency can be taken into consideration when sentencing for a later criminal conviction. *Commonwealth ex rel. Hendrickson v. Myers*, 393 Pa. 224, 144 A. 2d 367 (1958). Realistically, an adjudicated juvenile will find his past record a great hindrance to him in obtaining public or private em-

ployment or in joining the armed services. Certainly, there is as great a need for an intensive review of an adjudication culminating in a probationary disposition as in one which results in the juvenile being committed to an institution or home.

Accordingly, the order of the lower court denying a rehearing is vacated and the record is remanded for a rehearing consistent with this opinion.

WATKINS and JACOBS, JJ., dissent.