Commonwealth, Appellant, *v.* Croft.

Argued April 21, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

580

*Milton M. Stein,* Assistant District Attorney, with him *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellant.

*Martha K. Treese,* Assistant Defender, with her *Vincent J. Ziccardi,* Defender, for appellees.

OPINION BY MR. JUSTICE JONES, December 20, 1971:
The Court of Common Pleas, Family Court Division, Juvenile Branch, of Philadelphia, adjudged each of the five appellees to be delinquent on various charges but

permitted them to remain in their respective homes subject to some form of juvenile probation. Timely petitions for rehearing were filed by each appellee alleging only that "errors of law and/or fact were made at the time of said hearing and that said Order was improvidently made." Each petition was subsequently denied as the juvenile court judge concluded that a rehearing is *discretionary* when the juvenile is not removed from his home. On appeal, the Superior Court reversed, two judges dissenting, and held that a rehearing was *mandatory* even with these limited forms of probation. *Moore Appeal,* 217 Pa. Superior Ct. 206, 269 A. 2d 395 (1970). We granted the Commonwealth's petitions for allocatur.

These appeals do not present the question of a *constitutional* right to a rehearing; nor is there present any question of the denial of a juvenile's right to appeal. "The action of the juvenile court is always subject to appellate review and correction for errors of law or abuse of discretion." *Holmes Appeal,* 175 Pa. Superior Ct. 137, 146, 103 A. 2d 454, 459 (1954); aff'd, 379 Pa. 599, 109 A. 2d 523 (1954), *cert. denied,* 348 U.S. 973 (1955).

The sole question of law presented by these appeals is whether a rehearing, following a probation order, is *mandatory* or *discretionary* under Section 15 of The Juvenile Court Law (Act of June 2, 1933, P. L. 1433, §15, 11 P.S. §257) which provides:

"Within twenty-one (21) days after the final order of any judge of the juvenile court, *committing or placing* any dependent, neglected or delinquent child, such child shall, as a matter of right, by his or her parent or parents or next friend, have the right to present to the court a petition to have his or her case or cases reviewed and reheard, if, in the opinion of such parent, parents, or next friend, an error of fact or of law, or of both, has been made in such proceedings or final

order, or if the said order has been improvidently or inadvertently made.

"*Upon the presentation of such petition the court shall grant such review and rehearing as a matter of right.*" (Emphasis added.)

The juvenile court judge relied on our language in *Com. v. McIntyre*, 435 Pa. 96, 98, 254 A. 2d 639, 641 (1969), that, " 'committing or placing' as used in 11 P.S. §257 envisions an order of the juvenile court judge 'placing' the juvenile in a home or institution." As correctly demonstrated by the Superior Court, *McIntyre* is inapposite as it involved the issue whether a rehearing is mandatory following the juvenile court's certification of the case to the criminal court. Such certification does not "commit" or "place" the juvenile and, moreover, certification is not a final order.

We also agree with the Superior Court's determination that an order of the juvenile court allowing a juvenile to remain at home subject to some form of probation is a "final order". We similarly recognize and approve the Superior Court's conclusion that even limited forms of probation "constitute some interference with the adjudicated youth's civil liberty." 217 Pa. Superior Ct. at 208, 269 A. 2d at 396. However, none of these legal principles resolve the pivotal issue posed by these appeals: Does a juvenile court order allowing the delinquent youth to remain at home subject to some form of probation constitute a final order *committing or placing* the juvenile which entitles the juvenile to a rehearing as a matter of right?

From our examination of the entire Juvenile Court Act, we conclude it was not the legislative intent to grant rehearings as a matter of right from this type of order. Although the Act nowhere specifically defines "allow", "place", or "commit", such a distinction is drawn by Section 8 of The Juvenile Court Law (Act of June 2, 1933, P. L. 1433, §8, as amended, 11 P.S.

§250) which deals with permissible orders after adjudication. Whereas Section (a) of that statute vests the juvenile court with power to *"allow* a child to remain in its home . . . subject . . . to the supervision and guardianship of a probation officer." (emphasis added), the remaining sections refer to orders which *"commit* a child" (emphasis added), to the care of an individual, institution or school. Thus, a child is not "committed" on probation when he is allowed to recer. In our view, a juvenile is "committed" or "placed" main at home under the supervision of a probation offionly when the child is taken from the custody of his or her parents or guardian.

A second and important reason for this interpretation concerns the great impact of the Superior Court's statutory construction on the administration of juvenile court justice. This point is graphically illustrated by reference to the following table of dispositions by the juvenile court of Philadelphia.[1]

1. __Disposition of Cases by the Juvenile Court of Philadelphia__

| Type of Disposition | 1970 | 1969 | 1968 | 1967 | 1966 | 1965 | 1964 | 1963 |
|---|---|---|---|---|---|---|---|---|
| Total Cases | 17,327 | 16,468 | 14,510 | 12,180 | 12,294 | 11,183 | 13,987 | 11,007 |
| Miscellaneous Cases* | 9,858 | 9,405 | 8,025 | 5,885 | 5,153 | 4,560 | 5,838 | 5,087 |
| Discharged as to offense but continued under supervision | --- | --- | 1,507 | 1,686 | 1,449 | 1,073 | 1,106 | 1,034 |
| Probationed | 5,312 | 4,554 | 3,513 | 3,247 | 3,754 | 3,310 | 4,776 | 2,873 |
| Committed | 1,163 | 1,339 | 1,038 | 1,196 | 1,793 | 2,151 | 2,267 | 2,013 |
| Remain as Committed | 994 | 1,170 | 427 | 166 | 145 | 89 | --- | --- |

* This category includes cases: (a) referred elsewhere for disposition including certification to criminal court; (b) dismissed, discharged or held open without further action; (c) disposed of on another charge but continued under supervision; (d) referred for treatment; (e) restitution orders; and (f) "adjudged delinquent, etc."

Discounting miscellaneous cases—the vast majority of which are cases that have been dismissed, discharged or held open without further action[2]—it is evident that probation is the overwhelming method of disposition of delinquency adjudications by the juvenile court of Philadelphia. If each juvenile released on probation were to demand and receive a rehearing, the impact on the courts of this Commonwealth would be staggering. Nothing in our case law or The Juvenile Court Law requires such a meaningless misallocation of limited judicial resources especially when the petitions for rehearing merely allege that "errors of law and/or fact were made at the time of said hearing and that said Order was improvidently made."

Although we earlier concluded that the teaching of *McIntyre* did not cover this situation, we do achieve the identical result in a different context: " 'committing or placing' as used in 11 P.S. §257 envisions an order of the juvenile court judge 'placing' the juvenile in a home or institution." 435 Pa. at 98, 254 A. 2d at 641. Accordingly, we are of the opinion that a juvenile allowed to remain at home subject to probation is not entitled to a rehearing *as a matter of right.* We do wish to emphasize, however, that our ruling does not affect the juvenile court's discretionary power to grant rehearings when the best interests of the juvenile would be served by such a rehearing.

The orders of the Superior Court are reversed and the orders of Philadelphia Court of Common Pleas, Family Court Division, Juvenile Branch, are affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The issue presented here, properly framed by the majority of the Superior Court is "whether an order

---

[2] Choosing 1970 as a representative year, 9,468 cases were dismissed, discharged or pending as compared to 9,858 cases in the total category of miscellaneous cases.

of probation is a final order of commitment or place-ment,"[1] so as to grant to an adjudicated delinquent the mandatory right to a rehearing where errors of law or fact or improvident orders can be corrected. The majority holds, contrary to the language and pur-pose of the statute,[2] that an adjudicatory order return-ing a juvenile to his home subject to the conditions of probation is not a "final order of commitment or place-ment" and the court can grant or deny a rehearing in its discretion.[3] Accordingly, I dissent and would affirm the Order of the Superior Court.

The statute in question reads as follows: "Within twenty-one (21) days after the final order of any judge of the juvenile court, *committing or placing* any . . . delinquent child, such child shall, *as a matter of right, by his or her parent or parents or next friend, have the right* to present to the court a petition to have his or her case or cases reviewed and reheard, if, in the opin-ion of such parent, parents, or next friend, *an error of fact or of law, or of both,* has been made in such pro-ceedings or final order, or if the said order has been improvidently or inadvertently made."

Act of June 2, 1933, P. L. 1433, §15, 11 P.S. §257. (Emphasis added.)

The statute gives the court numerous options as to the final order it can fashion after adjudicating a juve-nile as a delinquent:

". . .

---

[1] *Moore Appeal,* 217 Pa. Superior Ct. 206, 208, 269 A. 2d 395, 396 (1970).

[2] Act of June 2, 1933, P. L. 1433, 11 P.S. §§243 et seq.

[3] In *Holmes' Appeal,* 379 Pa. 599, 109 A. 2d 523 (1954), cert. denied, 348 U.S. 973, 75 S. Ct. 535 (1955), the question was not raised yet the facts indicate that appellant was granted a rehear-ing after an adjudication of delinquency. *Id.* at 603, 109 A. 2d at 524. There is no way of determining whether it was believed a matter of right or in the discretion of the trial court.

"The court may—

"(a) Allow a child to remain in its home . . . or place such child in a suitable family home, *subject, in either case, to the supervision and guardianship of a probation officer, and may require such child to report to the probation officer as often as deemed necessary,* and may require such child to be returned to the court for further proceedings whenever the same appears to the court to be necessary.

"(b) Commit a child to the care, guidance and control of some reputable citizen of good moral character, *subject to the supervision of a probation officer. . . .*

"(c) Commit a child to some suitable institution. . . .

"(d) Commit a child to an industrial or training school. . . .

"(e) Commit any child over the age of sixteen years to any state industrial school or home. . . ." *Id.* §8, 11 P.S. §250 (emphasis added).

The majority attributes to the Legislature the intent to draw an artificial distinction between the first type of order authorized in subsection (a), returning the child to the custody of his parents, and all other orders including the order authorized by the second part of subsection (a), "placing" the child "in a suitable family home." The majority justifies this statutory surgery on the ground that Section 257, in granting a mandatory rehearing, uses the words "committing or placing" which appear in all the possible orders of Section 250 except for the first part of subsection (a).[4] I cannot discern any legislative intent to deprive the adjudicated delinquent returned to the custody of his parents on probation the right to a rehearing granted to all other delinquents after a "final order" has been made.

---

[4] The words "committing or placing" on which the majority's analysis completely relies are nowhere defined in the statute. *See* Act of June 2, 1933, P. L. 1433, §1, 11 P.S. §243.

The statute also grants a right to a hearing "[i]f, at any time after the final order of any juvenile court *placing or committing* any . . . delinquent child, a change of circumstances has taken place which, in the opinion of the parent or parents or next friend of such child, warrants the revocation or modification of such final order. . . ." *Id.* §16, 11 P.S. 258. This section clearly authorizes the revocation of probation under the appropriate circumstances. See *Holmes' Appeal,* 379 Pa. 599, 109 A. 2d 523 (1954), cert. denied, 348 U.S. 973, 75 S. Ct. 535 (1955). Furthermore, the right of a natural parent to petition the court for a revocation or modification of its order under this section has been recognized. *Ciammaichella Appeal,* 369 Pa. 278, 85 A. 2d 406 (1952). There can be no reason why the similar right to a rehearing granted under Section 257 should not also be accorded the delinquent on probation in the custody of his parents when both sections of the statute refer to "the final order" of the court "committing or placing" the delinquent child.

The majority's reasoning assumes that the Legislature found a significant distinction between being placed on probation and returned to the custody of parents, and all the other possible orders. A juvenile who is "placed" with a family other than his own and *placed on probation* enjoys the right of rehearing while the juvenile who is returned to his own parents subject to the same conditions of probation does not. There is nothing in the statute or any considerations of policy to support this distinction.

It cannot be argued that there is any difference in restraint of liberty between being allowed to return to one's parents on probation and being placed with a suitable family on probation. Yet, the majority's conclusion seems to rely on this premise in order to find a legislative intent to deprive juveniles returned to their parents the right to a rehearing. This premise is clear-

ly unfounded. Both juveniles will be subject to conditions of probation. The majority concedes that even "limited forms of probation constitute a restraint of liberty". We specifically recognized that probation is ". . . unquestionably a restriction on the defendant's freedom and a deprivation of his liberty within the meaning of the Fourteenth Amendment." *Commonwealth v. Vivian,* 426 Pa. 192, 200, 231 A. 2d 301, 305 (1967); *Jones v. Cunningham,* 371 U.S. 236, 242-43, 83 S. Ct. 373, 377 (1963). The statute authorizes conditions of probation equally restrictive whether the juvenile is committed to the custody of his parents or "placed" in a suitable family home or "committed" to the care of a reputable citizen of good moral character. Act of June 2, 1933, P. L. 1433, §8, 11 P.S. §250.

The statute grants a rehearing as a matter of right to correct "an error of fact, or of law" and orders "improvidently and inadvertently made". *Id.* §15, 11 P.S. at §257. The likelihood that the adjudication of delinquency is subject to one or more of these deficiencies is the same whether the juvenile is returned to his parents, placed with another family, or committed to an institution. As we observed in *Commonwealth v. McIntyre,* 435 Pa. 96, 254 A. 2d 639 (1969), "[t]he rationale behind allowing the juvenile a rehearing as of right under 11 P.S. §257 rests largely on the need for careful discretionary action by the juvenile court judge in 'placing' the juvenile in a way 'which serves the best interests of both the child and society.'" *Id.* at 98, 254 A. 2d at 641; see *Jenkins Appeal,* 210 Pa. Superior Ct. 501, 234 A. 2d 49 (1967), where the court observed that the right to a rehearing "was not designed simply to afford the appellate courts an adequate record for review. It was also designed to assure that the utmost care and consideration would be given by the Courts in any proceeding affecting a juvenile". *Id.* at 505, 234 A. 2d at 52.

Section 257's right to a rehearing to correct possible errors of fact or law is completely in accord with the mandate of recent United States Supreme Court decisions recognizing the due process rights of juveniles in delinquency proceedings. *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068 (1970) ; *Application of Gault,* 387 U.S. 1, 87 S. Ct. 1428 (1967) ; *Kent v. United States,* 383 U.S. 541, 86 S. Ct. 1045 (1966).[5] In *Winship,* the Court held applicable to juvenile proceedings the requirement that the proof be beyond a reasonable doubt in those cases involving conduct which would constitute felonies for adults, and observed that "it is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty." 397 U.S. 358, 364, 90 S. Ct. 1068, 1073. Section 257 in granting an adjudicated delinquent a right to a rehearing embodies this concern for accurate factfinding.

The stigma of conviction attaches to a juvenile with equal force whether he is ordered returned to the custody of his parents, placed with a "suitable family", or a "citizen of good moral character", or committed to an institution. In *Gault,* supra, the United States Supreme Court observed: ". . . it is frequently said that juveniles are protected by the process from disclosure of their deviational behavior. . . This claim of secrecy, however, is more rhetoric than reality. Disclosure of court records is discretionary with the judge

---

[5] The United States Supreme Court in *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S. Ct. 1976 (1971), held that due process did not require a jury trial in juvenile proceedings, affirming the opinion of this Court in *Terry Appeal,* 438 Pa. 339, 265 A. 2d 350 (1970). The Supreme Court stated: "But one cannot say that in our legal system the jury is a *necessary component of accurate fact finding*". 403 U.S. 528, 543, 91 S. Ct. 1976, 1985.

in most jurisdictions. Statutory restrictions almost invariably apply only to the court records, and even as to those the evidence is that many courts routinely furnish information to the FBI and the military, and on request to government agencies and even to private employers. Of more importance are police records. In most States the police keep a complete file of juvenile 'police contacts' and have complete discretion as to disclosure of juvenile records. Police departments receive requests for information from the FBI and other law-enforcement agencies, the Armed Forces, and social service agencies, and most of them generally comply. Private employers word their application forms to produce information concerning juvenile arrests and court proceedings, and in some jurisdictions information concerning juvenile police contacts is furnished private employers as well as government agencies." 387 U.S. 1, 24-25, 87 S. Ct. 1428, 1442. This Court has specifically held that a prior adjudication of delinquency can be considered during sentencing for a subsequent criminal conviction. *Commonwealth ex rel. Hendrickson v. Myers,* 393 Pa. 224, 144 A. 2d 367 (1958). There is no basis in reason for denying the adjudicated delinquent on probation in the custody of his parents the opportunity to challenge the determination and if successful to remove it from his record immediately. Nor can it be maintained that the right of appeal is a substitute for the right to a rehearing. The delay and narrower scope of review make an appeal an inadequate substitute for the full-fledged hearing at which additional evidence can be presented, provided by Section 257.

Finally, I am totally unpersuaded by the majority's reliance on statistical data to support their contention that recognizing the right of a delinquent returned to his parents on probation to a rehearing will swamp the juvenile courts. First, the statistics *only* indicate that a significant number of cases result in

probation as a final order. There is no indication as to what percentage of those placed on probation actually requested a rehearing under Section 257. Furthermore, the statistics do not reveal what percentage of these probationed cases were delinquents returned to the custody of their parents as opposed to delinquents being placed with a suitable family or committed to a reputable citizen of good moral character. Under the majority's theory, only the first class of delinquents are not entitled as a matter of right to a rehearing under Section 257. Even assuming that the majority's statistics supported their contention—which they do not, it would be irrelevant because of the clear legislative intent manifested to grant juveniles subject to all final orders authorized by Section 250 the right to a rehearing. Unsupported speculations about the burden on the courts can never be grounds for ignoring a clear legislative mandate. Section 257's right to a rehearing, which serves the function of a motion for a new trial and allows the juvenile court the opportunity to correct errors in its adjudication, may reduce the burden on the appellate courts.

I would therefore vacate the order of the Court of Common Pleas, Family Court Division, Juvenile Branch and remand the record for a rehearing guaranteed by Section 257.

Mr. Justice O'Brien joins in this dissent.