390 A.2d 1264

**COMMONWEALTH of Pennsylvania**

**v.**

**Walter Lee Jefferson STEWART, Appellant.**

Superior Court of Pennsylvania.

Argued June 20, 1977.

Decided July 12, 1978.

336

Edward F. Browne, Jr., Assistant Public Defender, Lancaster, for appellant.

D. Richard Eckman, District Attorney, Lancaster, submitted a brief for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

On April 25, 1974 at approximately 9:20 P.M., plainclothes officers John Ulrich and James Neimer were traveling north in an unmarked police cruiser on North Lime Street in Lancaster, Pennsylvania. According to the testimony of Captain Ulrich, their police cruiser had just passed the intersection of Grant and North Lime Streets when he saw a lone individual walking north. Under the street lights, it appeared to Officer Ulrich that the individual was a man named Cornell Galloway, who at that time was a convicted murderer escaped from prison. Captain Ulrich told Lt. Neimer of his observation and directed that the latter pull the car to the side of the street. When they did this, appellant crossed the street and continued along his way on the opposite side.

Captain Ulrich got out of the automobile and started to walk after appellant. When appellant turned to walk down Orange Street, Captain Ulrich called to him, identifying himself as a police officer, and told appellant to stop. Captain Ulrich testified that his reason for doing this was his belief that appellant was Cornell Galloway.

When he heard the officer call to him, appellant stopped, turned around and began to walk back towards Captain Ulrich. As he did so, a car passed between the two men. Captain Ulrich then saw appellant put his hand into his right pocket "as if he grabbed something," though Captain Ulrich could not see more than this because of the passing auto. After the vehicle moved, ten glassine packets of what was later proved to be heroin were found lying on the street near appellant. Captain Ulrich testified that he didn't see any glassine packets lying on the street before the car passed.

Captain Ulrich led appellant to the sidewalk and frisked him, taking a pistol from appellant's person. Even then, Captain Ulrich believed that appellant might be Cornell Galloway. While this action was going on, Lieutenant Neimer was picking up the glassine packets. Appellant was arrested and taken to the police station for apparent possession of heroin and a firearms violation.[1] Before he arrived at the station, appellant told the officers his name and Detective Henry, at the station, checked the identification.

Appellant raises three issues with his appeal. First, it is argued that the stopping of appellant was unconstitutional and that any evidence seized in connection with this incident should be suppressed. It is admitted that the police need not meet the strict probable cause standard to justify a brief stop of a suspicious individual. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Commonwealth v. Jones,* 474 Pa. 364, 378 A.2d 835 (1977); *Commonwealth v. Berrios,* 437 Pa. 338, 263 A.2d 342 (1970); *Commonwealth v. Ellis,* 233 Pa.Super. 169, 335 A.2d 512 (1975); *Commonwealth v. Smith,* 225 Pa.Super. 509, 311 A.2d 716 (1973). On this point, we quote at length from *Adams v. Williams,* supra, in which the Supreme Court said,

"In *Terry* this Court recognized that 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' . . . The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining

1. Carrying a concealed weapon is a crime under the Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 6106.

more information, may be most reasonable in light of the facts known to the officer at the time." 407 U.S. at 145–146, 92 S.Ct. at 1923 (citations omitted).

Recently, our Supreme Court has noted that there are two kinds of "stops." First, there is the "legal stopping" which is for the purpose of approaching a person and addressing questions to him. *Commonwealth v. Jones,* supra, 474 Pa. at 369–372, 378 A.2d at 838–839, citing *Commonwealth v. Berrios,* 437 Pa. 338, 340, 263 A.2d 342 (1970). Second, there is the "forcible stop" which restrains an individual's freedom. *Commonwealth v. Jones,* supra, 474 P. at 371–372, 378 A.2d at 839, citing *Terry v. Ohio,* supra, 392 U.S. at 32, 88 S.Ct. 1868. As the court indicated, the force used to restrain the individual may either be a physical force or a show of authority. *Commonwealth v. Jones,* 474 P. at 371–372, 378 A.2d at 839, citing *Terry v. Ohio,* 392 U.S. at 19, 88 S.Ct. 1868. *Commonwealth v. Berrios,* supra, said that a policeman may legally stop and question a person but that the officer may not restrain that individual from walking away "unless he has 'probable cause' to arrest that person or he observes such unusual and suspicious conduct on the part of the person who is stopped and searched that the policeman may reasonably conclude that criminal activity may be afoot . . . ." 437 Pa. at 340, 263 A.2d at 343. The instant case certainly falls within this latter exception.

As the recitation of facts indicated, Capt. Ulrich mistook appellant for an escaped felon.[2] Prison escape itself is a

2. For this reason, appellant's case is clearly distinguishable from *Commonwealth v. Jones,* 474 Pa. 364, 378 A.2d 835 (1977). There a police officer stopped and questioned an individual because the officer's "curiosity and suspicion" were aroused when he saw Jones hitchhiking north and later walking south. In *Jones,* the officer testified that the accused was violating no law when observed. However, after Jones was stopped, the officer radioed to have a check run on Jones, and an outstanding arrest warrant was discovered. In reversing the conviction, the court said the facts did not support a reasonable conclusion that criminal activity may have been afoot.

The case now before us is different in that the police officer involved believed that appellant was an escaped murderer, which is a crime.

crime,[3] and if the officer reasonably believed that appellant was an escapee, then the officer was justified in stopping appellant. Appellant argues that Capt. Ulrich's action was not justified because appellant is 5'6" tall, 140 pounds and, according to appellant's estimation Cornell Galloway is 5'8" or 5'9" tall and 160 pounds.[4] Appellant further argues that because Capt. Ulrich could not give an estimate of Galloway's size or state whether Galloway had any facial hair, the officer's stop of appellant was not reasonable. We are not persuaded by this argument.

The record of testimony discloses that the officer had seen Galloway "several times while he was growing up." When asked what it was that made him suspect that appellant might be Galloway, the officer listed size, general appearance, color, and some of the features. The officer testified that his observation of appellant was made under street lights. This court has held that a "stop and frisk" must be supported by specific and articulate facts which, when considered with any rational inferences from those facts, reasonably warrant the intrusion. *Commonwealth v. Ferraro,* 237 Pa.Super. 268, 352 A.2d 548 (1975); *Commonwealth v. Galadysa,* 248 Pa.Super. 226, 375 A.2d 69 (1977). We believe that the factors given by the officer, along with the officer's familiarity with Galloway, were enough to warrant a brief stop for investigatory purposes. The situation was one that required quick action, for if appellant were an escaped felon, a convicted murderer, he was a danger to the community. Under the circumstances, the only possible way for the officer to ascertain if appellant were Cornell Galloway was to stop appellant and approach him. We hold that this brief stop of a "suspicious individual" was reasonable "in light of the facts known to the officer at the time." *Adams v. Williams,* 407 U.S. at 146, 92 S.Ct. at 1923.

We also conclude that appellant's arrest was proper. Appellant was not arrested merely for his alleged re-

**3.** See the Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, 18 Pa.C.S.A. § 6121 (1973).

**4.** Appellant claims to have met Cornell Galloway.

semblance to Cornell Galloway but rather because ten glassine packets of suspected heroin were found on the ground near appellant. It is a basic principle that a warrantless arrest may be made provided officer has probable cause to believe the person arrested has committed or is in the process of committing a crime, *Commonwealth v. Farley,* 468 Pa. 487, 364 A.2d 299 (1976); *Commonwealth v. Wilder,* 461 Pa. 597, 337 A.2d 564 (1975); *Commonwealth v. Rush,* 459 Pa. 23, 326 A.2d 340 (1974); *Commonwealth v. Hunter,* 240 Pa.Super. 23, 360 A.2d 702 (1976); *Commonwealth v. Tookes,* 236 Pa.Super. 386, 344 A.2d 576 (1975). As this court has already noted, an arrest following an initial stop of a suspicious person must be supported by probable cause. *Commonwealth v. Hayes,* 237 Pa.Super. 510, 352 A.2d 121 (1975); *Commonwealth v. Ellis,* 233 Pa.Super. 169, 335 A.2d 512 (1975). In appellant's case, probable cause clearly existed. Capt. Ulrich saw appellant reaching into his pocket "as if (appellant) grabbed something." Then, after a car passed between the two men, Capt. Ulrich saw the glassine packets. In this situation, the officer had probable cause and appellant's arrest was legal.

 Nor does the second argument of appellant present a basis for reversal. Appellant asserts that his trial did not commence within the two hundred and seventy day deadline established by Pa.R.Crim.P. 1100(a)(1).[5] The Rule allows for an exception however, if the trial cannot be commenced within the prescribed period despite the due diligence of the Commonwealth, the Commonwealth may obtain an order extending the time for commencement of trial.[6]

In the case now at bar, a criminal complaint was filed May 30, 1974, charging appellant with possession of heroin, in violation of the Controlled Substance, Drug, Device and

**5.** Pa.R.Crim.P. 1100(a)(1) reads:
"Trial in a court case in which a written complaint is filed against the defendant after June 30, 1973 but before July 1, 1974 shall commence no later than two hundred and seventy (270) days from the date on which the complaint is filed."

**6.** Pa.R.Crim.P. 1100(c).

Cosmetic Act.[7] Trial did not commence until April 1, 1975, 306 days after the filing of the complaint. But prior to trial, on February 6, 1975, the Commonwealth filed a petition for extension of time for commencing trial. This motion was heard and granted by the trial court on March 13, 1975, giving the Commonwealth an extension of 120 days. The basis for the extension was the unavailability of appellant between August 1, 1974 and September 16, 1974 (forty-four days) and between November 4, 1974 and December 18, 1974 (forty-six days).

According to the record, appellant was arraigned on June 7, 1974, at which time his preliminary hearing was set for August 1, 1974. Appellant did not appear for this preliminary hearing and on September 16, 1974 he was arrested pursuant to a bench warrant. Another preliminary hearing was set for November 4, 1974, of which notice was sent to appellant. Once again, appellant did not appear. When he did come before the court, appellant later claimed that he did not receive the notice because he had temporarily moved from his residence on East Lemon Street to a place on Chester Street. Then, after approximately a month, appellant returned to his East Lemon Street address, thus receiving his notice of hearing only after the date had passed. It must be noted that nothing in the record shows that appellant made any effort to notify authorities of his temporary address change.

We conclude that appellant's trial was timely. By his own words, appellant proved that he had moved from the address which he had given the authorities and that he made no attempt to inform the court of his whereabouts. Furthermore, the authorities had no way of knowing that appellant had not received his notice since the letter was not returned to the court but was accepted by appellant's wife.

Beginning May 30, 1974, the date the complaint was lodged against appellant and counting to February 6, 1975, the date that Commonwealth petitioned for extension, two-hundred and fifty two days had passed. Commonwealth's

7. See 35 P.S. Sec. 780–113(a)(16).

petition was, therefore, timely. Appellant's trial followed eighteen days [8] after the trial court's order. The mandate of Rule 1100(a)(1) was thus satisfied.

Appellant also argues that his prosecution for possession of heroin was illegal as double jeopardy and contrary to the provisions of Pennsylvania statutory law,[9] along with the holding of *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432 (1973). We do not reach the merits of appellant's argument because we conclude that this issue was waived by appellant's failure to move for consolidation. *Commonwealth v. Erisman,* 247 Pa.Super. 476, 372 A.2d 925 (1977) (Cercone, J., concurring); *Commonwealth v. Green,* 232 Pa. Super. 134, 335 A.2d 493 (1975).

A reading of the record discloses the following relevant facts.

On April 25, 1974, appellant was charged with a violation of the Firearms Act [10] for allegedly carrying a pistol without a license. A few days later, on May 31, 1974, appellant was

**8.** Though the Commonwealth filed its petition on February 6, 1975, the motion was not argued before the trial court until March 13, 1975, on which day the lower court set a new trial date.

**9.** The provision in question reads:

"Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense;"

The Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 P.S. § 110.

**10.** Appellant's alleged act is contrary to the requirements of the Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 6106(a), which says:

"No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter."

also charged with possession of heroin, which is a crime under The Controlled Substance, Drug, Device and Cosmetic Act, another charge arising from the same incident. According to the record, the reason for the delay in charging appellant with the crime of possession was that the laboratory results, confirming that the substance which appellant allegedly carried was heroin, were not immediately available.

Appellant appeared before Judge William G. Johnstone, Jr. on January 24, 1975, and pleaded guilty to the firearms charge. The Court placed appellant on probation [11] for a period of one year and ordered appellant to pay a two hundred dollar fine plus the cost of prosecution.

After the disposition of the firearms charge, appellant filed pre-trial motions pertaining to the drug offense, pleading double jeopardy and autrefois convict. These were dismissed by the lower court on April 1, 1975. Appellant proceeded immediately to trial that same day and was found guilty after a hearing before a jury.

On the issue of multiple convictions, this court wrote, "[B]y giving the appearance of consent to the arrangement, the appellee has waived his right to claim harassment by multiple prosecutions. There can be no unjust contravention of the statute intended to protect the accused when a defendant is denied its use as a shield against a prosecution which he himself invited by his own designs." *Commonwealth v. Green,* 232 Pa.Super. 134, 145, 335 A.2d 493, 498 (1975).

A more recent opinion from this court cited *Green,* and went on to say,

"If the accused does not request that the offenses be joined, it is fair to conclude that he has waived a claim that Section 110 of the Crimes Code has been violated. On the other hand, it is unfair to dismiss charges for serious offenses on the basis of presumed protections

---

11. Probation is "punishment" for double jeopardy purposes. *Appeal of Moore,* 217 Pa.Super. 206, 269 A.2d 395, reversed on other grounds, *Commonwealth v. Croft,* 445 Pa. 579, 285 A.2d 118 (1970).

which the accused has not lifted a finger to exercise, especially since the accused is often in a better positions [sic] to know of a potential conflict with Section 110 of the Crimes Code than is the Commonwealth. The relatively drastic remedy of Section 110 should only be applied when an accused has not foregone the opportunity of moving to join all offenses in one prosecution." *Commonwealth v. Erisman*, 247 Pa.Super. 476, 372 A.2d 925, 927–928 (1977) (Cercone, J., concurring).[12]

The record indicates that appellant had ample time in which to protect his rights by moving for a consolidation. By May 31, 1974, appellant was aware that the Commonwealth intended to try appellant for two separate offenses that stemmed from the same incident. Appellant did not enter his plea of guilty on the weapons offense until January 24, 1975, or approximately eight months later. Appellant's failure to timely protest the separation of these two charges evidences his apparent willingness to undergo separate trials for each offense. His argument now will not be entertained.

Judgment affirmed.

SPAETH, J., files a dissenting opinion in which HOFFMAN, J., joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

18 Pa.C.S.A. § 110 provides that a subsequent prosecution is barred by a former prosecution if (among other circumstances): (1) the former prosecution resulted in a conviction; (2) the subsequent prosecution arose from the same criminal

12. See also, ABA Standards Relating to Joinder and Severance, Sec. 1.3(b), which says in part:
"A defendant's failure to (move for joinder) constitutes a waiver of any right of joinder as to related offenses with which the defendant knew he was charged."

episode as did the former prosecution; and (3) the offense on which the subsequent prosecution is based was known to the prosecutor when the trial in the former prosecution started. Here each of these requirements is met: (1) the former prosecution (the weapons charge) resulted in a conviction; 18 Pa.C.S.A. § 109(3), to which § 110 refers, defines "conviction" as including "a plea of guilty accepted by the court." (2) The subsequent prosecution (the narcotics charge) arose from the same criminal episode as did the former prosecution. And (3) although the arresting officer did not know that appellant possessed heroin, the substance the officer found in appellant's possession was subsequently analyzed, and by the time that appellant pleaded guilty in the former prosecution, the prosecutor did know that the analysis had shown the substance to be heroin. Accordingly, the subsequent prosecution in the narcotics charge was barred by appellant's guilty plea in the former prosecution on the weapons charge.

The majority does not disagree that the requirements of 18 Pa.C.S.A. § 110 have been met. Instead, the majority holds that appellant has waived the requirements; the majority finds this waiver in appellant's failure "to protect his rights by moving for a consolidation." Majority Opinion at 1270. In support of this holding the majority cites *Commonwealth v. Green,* 232 Pa.Super. 134, 335 A.2d 493 (1975), and the concurring opinion in *Commonwealth v. Erisman,* 247 Pa.Super. 476, 372 A.2d 925 (1977). Neither of these cases, however, is in point. In *Green,* "the Commonwealth attempted to bring all the separate charges . . . in one proceeding." 232 Pa.Super. at 144, 335 A.2d at 498. However, the preliminary hearing judge "unnecessarily" separated the charges, *id.,* sending one to the Municipal Court and the other to the Court of Common Pleas. The defendant's attorney not only did not object to this separation but "[he] and the Assistant District Attorney agreed with the proposal of the judge although neither party actually requested the separation." 232 Pa.Super. at 144–45, 335 A.2d at 498.

Here, the Commonwealth did not attempt to try the charges together; the court did not separate them—the Commonwealth did; and appellant's counsel did not agree to the separation. In *Erisman,* the former prosecution had not resulted in a conviction and therefore could not bar the subsequent prosecution; that is, unlike the present case, the requirements of 18 Pa.C.S.A. § 110 had not been met.

It is true that the concurring opinion in *Erisman* (CERCONE, J., joined by PRICE, J.) spoke of "requiring the accused to move to protect his privileges when he is readily able to do so." 247 Pa.Super. at 482, 372 A.2d at 928. This statement, however, cannot be regarded as a precedent; this is particularly so since the statement is contrary to the law as stated by our Supreme Court in *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432, *vacated and remanded,* 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), *on remand,* 455 Pa. 622, 314 A.2d 854 (1974), *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974). There the Court made plain that the burden is not on a *defendant* to *preclude* multiple prosecutions, but on the *Commonwealth* to *consolidate* prosecutions. After an extensive examination of the authorities, the Court summarized the reasons for this allocation of burden as follows: first (quoting the New Jersey Supreme Court in *State v. Cooper,* 13 N.J.L. 361, 375–76 (1833)), "the crown shall not oppress the subject, or the government the citizen, by unnecessary prosecutions"; and second "[c]ompulsory joinder . . . avoids piecemeal litigation and thus conserves precious judicial and professional manpower as well as the time of jurors, witnesses, and the use of public resources." 452 Pa. at 251–52, 304 A.2d at 441.

Accordingly, as the prosecution of appellant on the narcotics charge was barred by the former prosecution of appellant on the weapons charge, appellant should be discharged.

HOFFMAN, J., joins in this opinion.