**Commonwealth v. Gaito**

*Howard Hilner,* for plaintiff.
*Mark Frank,* for defendant.

ZIEGLER, *J.*, March 28, 1977—

## I. STATEMENT OF FACTS

Defendant, Joseph Gaito, was arrested and charged with violation of sections 6105 and 6106 of the Pennsylvania Uniform Firearms Act.[1] Defendant's arrest on January 8, 1977, occurred subsequent to his parole from the State Correctional Institution at Pittsburgh on November 18, 1976. Gaito had served seventeen and one-half years of a judgment of sentence which imposed a maxium period of incarceration of thirty-five years.

On December 1, 1976, Keith Donahue, an agent of the Pennsylvania Board of Parole, reviewed with defendant the terms and conditions of intensive parole supervision. Gaito was instructed, inter alia, that he was required to (1) maintain a permanent address; (2) notify the board of any change of address or employment; (3) report bi-weekly to the agent; (4) notify the board of any criminal investigation involving defendant; and (5) adhere to the proscriptions of the Uniform Firearms Act.

---

1. Act of December 6, 1972, P.L. 1482, 18 C.P.S.A. §§6105, 6106, eff. June 6, 1973.

On December 24, 1976, defendant's wife, Audrey Gaito, and a male companion, were shot to death by an unknown assailant at 211 Churchill Street, McKees Rocks, Pa. Police officers from the County of Allegheny attempted to locate defendant for questioning on Friday. They contacted the board of parole for defendant's address. A check at that address was negative, as was an effort to locate Gaito at the separate residences of two brothers, a sister and defendant's son. On Monday, December 27, 1976, Donahue was advised of the futile efforts of the police. He was also cognizant of the widespread media coverage of the homicides and the announced desire of the police to interrogate defendant.

Donahue attempted to locate defendant at the address which Gaito had supplied to the board. When this failed, he interrogated defendant's employer concerning his whereabouts. The employer advised Donahue that defendant had failed to report for work on Monday. Donahue immediately notified the district supervisor of the board of parole that, in his judgment, defendant was in violation of three parole conditions of the board.[2] The supervisor authorized Donahue to issue an arrest warrant for alleged parole violation on December 27, 1976.

The whereabouts of Joseph Gaito remained unknown until January 8, 1977. On that date, a confidential informant contacted the homicide division of the Pittsburgh police department. The caller requested the telephone number of officer John James. The informant then called James and advised that Gaito could be found on Sankey Avenue in the Carrick section of Pittsburgh. Defendant

_____

2. 37 Pa. Code §63.4.

was allegedly armed with a .38 caliber revolver. The informant also supplied the description of a station wagon automobile.

James testified at the suppression hearing that the informant was unknown to him except by the code name "Angel." James stated that informant was reliable because previous information from the male caller had led to over fifty arrests and convictions. James notified the homicide division regarding the information supplied by "Angel."

Officer William Hennigan of the homicide division received the information from James. He immediately contacted the board of parole to determine whether an arrest warrant was extant for Joseph Gaito. After establishing its existence, Hennigan and officer Henry Watson traveled to Sankey Avenue to locate defendant.

Gaito appeared with another individual after a short period of time. Defendant entered the station wagon as the police approached. The officers drew their revolvers and ordered defendant from the vehicle. Gaito was then searched. The police discovered a loaded .45 caliber pistol in defendant's belt. Defendant was arrested, transported to police headquarters, and charged with the instant offenses.

Defendant filed an application to suppress the evidence seized secondary to the search. Gaito contends (1) the arrest warrant was issued without probable cause; (2) the tip of the informant was inadequate to establish probable cause for the arrest; and (3) the "stop and frisk" doctrine is inapposite to the instant case. We have carefully reviewed the arguments of able counsel, and conclude the application must be denied.

## II. STATEMENT OF LAW

This interesting factual situation presents several important questions which remain unresolved in this jurisdiction. Therefore, it is important to isolate, at the outset, those contentions of defendant with which we agree.

A warrantless arrest must be based upon probable cause. It is settled that the two-pronged test of Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969), is applicable to a warrantless arrest. See, Commonwealth v. White, 447 Pa. 331, 340-41, 290 A.2d 246, 251-52 (1972). In order to establish probable cause based upon hearsay evidence, for example an informant's tip, the Commonwealth must prove (1) the reliability of the informant and (2) the underlying circumstances upon which the information is bottomed: Commonwealth v. White, supra. We have no difficulty in concluding that "Angel" is reliable. His information has led to numerous arrests and convictions in significant cases. The problem with the information, however, relates to the underlying circumstances on which the information was based.

"Angel" notified officer James that defendant was walking at a particular location, using a particular vehicle, and armed with a specific weapon. While this information was helpful to the police, there is no evidence of record which establishes the basis upon which the information was obtained. Was "Angel" present with Gaito? Was he calling from Sankey Avenue? Did he personally observe or ride with defendant in the vehicle? Did he observe the weapon? With regard to these inquiries, we must speculate. This we cannot do. Since we conclude the record fails to establish the

underlying circumstances upon which "Angel" based his information, we hold the police had no probable cause to arrest defendant on this statement alone: Betrand Appeal, 451 Pa. 381, 303 A.2d 486 (1973).

We depart from defendant's contentions at this juncture because, in our judgment, the arrest warrant of December 27, 1976, was constitutionally sound. Since officers Hennigan and Watson were cognizant of its existence, they were authorized by statute to arrest defendant: Act of May 1, 1929, P.L. 1182, sec. 1, as amended, 61 P.S. §309. Since the weapon was discovered pursuant to a valid arrest, the incidental search was also lawful. See, Commonwealth v. White, supra; Commonwealth v. Smith, 443 Pa. 151, 277 A.2d 807 (1971).

We begin our analysis with the observation that a paroled convict may be arrested for violation of parole: Act of May 10, 1909, P.L. 495, sec. 14, 61 P.S. § 298. The right of arrest extends to technical violations as well as violations emanating from convictions of penal statutes: Act of August 6, 1941, P.L. 861, sec. 21.1, as amended, June 28, 1957, P.L. 429, sec. 1, 61 P.S. § 331,21a. A parolee may be arrested, pursuant to an arrest warrant issued by the board of parole, by "all field agents of the Department of Justice and officers authorized by law to make arrest . . ." Act of May 1, 1929, P.L. 1182, sec. 1, as amended June 6, 1939, P.L. 1080, sec. 1, 61 P.S. § 309; see also, Commonwealth v. Pincavitch, 206 Pa. Superior Ct. 539, 214 A.2d 280 (1965).

Since we find the board of parole is authorized to issue warrants of arrest, we turn to the question of the standard, if any, by which the power must be exercised. Defendant argues the statutory au-

thorization is tempered by the constraints of the Fourth Amendment. Defendant urges this court to apply a constitutional standard because the arrest of defendant was allegedly without the regular administrative duties of the board of parole. The Commonwealth retorts that the board must be accorded board discretion in revoking parole even for alleged technicalities. Cf., Com. ex rel. Sparks v. Russell, 403 Pa. 320, 169 A.2d 884 (1961); Com. ex rel. Powell v. Frame, 23 Chester Co. 304 (1974); Com. ex rel. Klinefelter v. Board of Parole, 65 Dauph. 195 (1953).

Our research has failed to reveal any authority which requires the board of parole to issue an arrest warrant based upon probable cause. Defendant has cited none. It is logical, however, that the board of parole must have some reasonable justification before a warrant may issue.

The Superior Court of Pennsylvania has applied the Fourth Amendment to certain activities of parole agents in Commonwealth v. Brown, 240 Pa. Superior Ct. 190, 361 A.2d 846 (1976).[3] In Brown, the court held a warrantless arrest and search was constitutionally infirm when a parole agent " 'switched hats' and, in all relevant respects, became a police officer." 240 Pa. Superior Ct. at 198, 361 A.2d at 850. The court acknowledged a division of authority concerning the Fourth Amendment protections accorded a parolee: 240 Pa. Superior Ct. 196, 198, 361 A.2d 846, 849. Notwithstanding the distinguishing features of Brown, we conclude the Fourth Amendment, and

3. In addition, Morrissey v. Brewer, 408 U. S. 471 (1972), holds that parolees are entitled to due process. But what process is due?

Article I, Section 8 of the Constitution of Pennsylvania require, under the circumstances of this case, the arrest warrant of Joseph Gaito to be based upon probable cause.

The facts in the instant case establish the existence of probable cause to issue an arrest warrant, pursuant to statutory authority, for Gaito's alleged technical parole violations. Agent Donahue received information concerning the investigation of defendant and two homicides on December 24, 1976. The news media announced that the police were attempting to locate defendant for questioning. Gaito was required by his parole contract to "[n]otify the parole agent immediately of any arrest or investigation by law enforcement agencies." 37 Pa. Code 63.4(5). Defendant failed to comply.

Defendant also allegedly violated a residence requirement which mandates habitation at a "place specified by the Board, and . . . [no change] without written permission from the Board." 37 Pa. Code 63.4(3). He failed, moreover, to "make every effort to . . . maintain employment and to support his legal dependants." 37 Pa. Code 63.4(6); and allegedly violated condition four of his contract. The foregoing violations were personally substantiated by defendant's parole agent on December 27, 1976. Probable cause was extant. While they were mere allegations of technical violations, we believe the board would have been remiss if it failed to cite defendant and issue a warrant under the circumstances of this case. As a result, we conclude the constitutional constraints were satisfied at the time the board of parole issued an arrest warrant. Since we find the warrant

to be valid, the arrest, search and seizure were constitutionally sound. Defendant's application must be denied.

The search of Gaito may be sustained, in our judgment, on an alternative basis. In Terry v. Ohio, 392 U. S. 1 (1968), the United States Supreme Court countenanced a warrantless stop and frisk based upon reasonable suspicion. The court stated as follows: "We . . . hold . . . that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, and where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." 392 U. S. at 30.

The federal standard articulated in Terry has been adopted by the Supreme Court of Pennsylvania in Commonwealth v. Hicks, 434 Pa. 153, 253 A.2d 276 (1969). There the court held a search without probable cause can be sanctioned if the arresting officer personally observes "unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous." 434 Pa. at 158-59, 253 A.2d at 279.

In the instant case, Terry and Hicks would not authorize the search of defendant absent probable cause. Officers Hennigan and Watson did not personally observe "unusual and suspicious" conduct by Gaito. The record indicates defendant was stopped and searched subsequent to peacefully walking to, and entering, an automobile.

The instant search is lawful, however, on the basis of Adams v. Williams, 407 U. S. 143 (1972). Adams represents a federal extension of Terry. In Adams, a police officer, acting on the tip from a confidential informant concerning the presence of a weapon in a nearby vehicle, approached the car to investigate. When the defendant rolled down the window, the police officer conducted a frisk and found a weapon. The police then conducted a full search and discovered drugs. The Supreme Court upheld the search, although the tip lacked the factual basis required by Aguilar v. Texas, supra.

The federal standard articulated in Adams has been cited with approval by the Superior Court of Pennsylvania. See, e.g., Commonwealth v. Dever, 243 Pa. Superior Ct. 87, 364 A.2d 463 (1976); Commonwealth v. Wascom, 236 Pa. Superior Ct. 157, 344 A.2d 630 (1975); Commonwealth v. Smith, 225 Pa. Superior Ct. 509, 311 A.2d 716 (1973). Moreover, the Supreme Court of Pennsylvania has cited Adams in Commonwealth v. Murray, 460 Pa. 53, 331 A.2d 414 (1975), and Commonwealth v. Pegram, 450 Pa. 590, 301 A.2d 695 (1973). Whether the Supreme Court will adopt the federal standard in the instant case remains unclear. So long, however, as Adams remains viable within this jurisdiction, it is controlling of the present case.

For the foregoing reasons, the application of Joseph Gaito to suppress evidence must be denied.

## ORDER

And now, March 28, 1977, after consideration of the arguments of able counsel, it is ordered that the application of Joseph Gaito to suppress evidence be and hereby is denied.