Commonwealth *v.* Ellis, Appellant.

170

Submitted December 6, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Holly Maguigan* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*Marianne E. Cox, Mark Sendrow,* and *Steven H. Gold-blatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., March 31, 1975:

The sole contention before this Court is that appellant's conviction was based on evidence obtained as a result of an illegal search and seizure. We find no merit to this claim.

On January 24, 1974, during the early morning hours, Officer Gary Merlin of the Philadelphia Police Department was assigned to foot patrol in the area of 13th and Market Streets. At approximately 2 a.m., he observed appellant walking south on 13th Street, near Cuthbert Street. Merlin testified at the pre-trial suppression hearing that appellant was carrying what the officer believed was an adding machine. In fact, appellant had a checkwriting machine. As the officer approached, the appellant placed the checkwriter behind his back. The officer attempted to question the appellant about the "adding machine", but he received no answer. At that moment, Merlin seized the checkwriter from the appellant. After reading the appellant his "Miranda" warnings, Merlin questioned appellant about the machine. Appellant told the officer contradictory stories about how he acquired the checkwriter and about where he was taking the machine.[1]

At that point, Merlin was joined by another officer in a patrol car. Appellant was placed under arrest and

---

1. The appellant first told the officer that he received the machine from his sister at a restaurant located at 8th and Vine Streets. Then he stated that she was not in the restaurant, but was sitting in an automobile. Thereafter, the appellant gave two other locations where he had received the machine. He also told the officer that he was taking the machine to his sister's home at 15th and South Streets. On further questioning, appellant also changed the location to which he was to deliver the checkwriter.

taken to the 6th District station. During appellant's detention at the police station, the police received a report of a burglary and theft of a checkwriting machine. The report came from the assistant manager of Partime, Inc., a company located near 13th and Cuthbert where appellant was arrested. The assistant manager subsequently identified the checkwriter as the one taken on January 24.

Appellant was indicted for burglary, theft, and receiving stolen property. Appellant filed a motion to suppress which was heard on April 1, and denied on April 2, 1974. Thereafter, on the same day, the appellant waived his right to trial by jury and was tried by the judge who had decided his suppression motion. He was found guilty of receiving stolen property, but acquitted of the other charges. The court sentenced appellant to a term of six to twenty-three months' imprisonment.

The appellant contends that the officer acted on mere suspicion when he made the initial seizure of the checkwriting machine, thereby violating appellant's right under the Fourth Amendment to be free from unreasonable searches and seizures.

There is no doubt that a police officer is justified in making a brief investigatory stop of an individual who raises the officer's suspicion "in order to determine his identity or to maintain the status quo momentarily." *Adams v. Williams,* 407 U.S. 143, 146 (1972) ; see also *Terry v. Ohio,* 392 U.S. 1 (1968). After the initial stop, an officer must have probable cause before he can effect an arrest: "Probable cause to arrest depends upon whether, at the moment the arrest was made, the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the citizen had committed or was committing an offense." *Commonwealth v. Mackie,* 456 Pa. 372, 375, 320 A. 2d 842 (1974). See also, *Beck v. Ohio,* 379 U.S. 89 (1964).

Appellant cites a series of cases[2] that suggest that refusal to answer questions or flight *alone* is insufficient justification to arrest. It is our view that while in isolation such activity is not sufficient for an arrest, when coupled with other inculpatory circumstances, such information is relevant to a finding of probable cause.

In the instant case, the officer was clearly justified in stopping the appellant. From the officer's point of view, he was confronted with an individual carrying what appeared to be an adding machine in what he knew to be a high crime area at 2:00 a.m. It was unlikely that at that hour the appellant would be carrying the machine in connection wth his business. It was much more likely that the machine was the fruit of a burglary. Then, the officer sought to confirm his suspicion. At that point, appellant became furtive and uncooperative. When appellant finally did attempt to explain himself, he told several different stories about where he had obtained the checkwriter and where he was taking it. On these facts, the officer had probable cause to arrest the appellant.[3]

---

2. See *Terry,* supra, at 34 (concurring opinion of Justice WHITE) : ". . . refusal to answer furnishes no basis for an arrest, *although it may alert the officer to the need for continued observation.*" (Emphasis added). See also, *Commonwealth v. Pegram,* 450 Pa. 590, 301 A. 2d 695 (1973), (flight from near site of a burglary) ; *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A. 2d 914 (1973). (Quickening of pace and then flight when police pursued) ; *Commonwealth v. Santiago,* 220 Pa. Superior Ct. 111, 283 A. 2d 709 (1971). (Flight when summoned by the police.)

3. At minimum, the officer had probable cause to believe that appellant was guilty of receiving stolen property. To arrest under Rule 101 of the Pa. Rules of Criminal Procedure, the officer must witness a misdemeanor. Receiving stolen property is defined as follows: "A person is guilty of theft if he intentionally receives, *retains, or disposes* of movable property of another knowing that it has been stolen, or believing that it has probably been stolen. . . ." (Emphasis supplied.) 18 P.S. §3925. Thus, the offense is an ongoing one, still occurring in the instant case at the time the officer observed the appellant.

Appellant cites *Commonwealth v. Mackie,* supra, as controlling. In *Mackie,* the Supreme Court held that the appellant therein was arrested without probable cause. Mackie was observed carrying a portable television set and a pair of field glasses in a "high crime" area. Mackie was walking down the street in the middle of the day. We do not suggest that the Fourth Amendment lies dormant during the night hours. We do recognize, however, that some activities that are commonplace during daytime, business hours give rise to suspicion during other times of the day. Upon questioning Mackie, the arresting officer felt that the appellant's "story didn't seem right."[4] Mackie, however, did not give a series of inconsistent stories or an initially outlandish story.

The facts in cases such as the instant one are critical: "Each case must be reviewed under its own unique facts and circumstances." *Mackie,* supra at 376, 320 A. 2d at 844. (Cf. *Terry,* supra at 13: "Street encounters between citizens and police officers are incredibly rich in diversity.") We believe that the present facts are more akin to those in *Commonwealth v. DeFleminque,* 450 Pa. 163, 299 A. 2d 246 (1973), than those in *Mackie*: in *DeFleminque,* appellant was observed coming from behind a

---

4. The story told by Mackie was recounted by the arresting officer at trial: "The officer testified: 'I asked him—I asked the defendant where was he going. The defendant told me he was going home. I asked him where did he live at. He told me in the [3100] block of Bancroft. I asked the defendant where he was coming from. He told me 3800 North 18th Street. I asked where did he get the t.v. from. He told me him and his girl friend had an argument. He took the t.v. back. So I told him it was unusual for him to be coming from 3800 North 18th Street all the way to Broad and Erie and Bancroft Street is only seven blocks away. The defendant told me that he was looking for a cab and there was no cab that passed him on the way. So I asked the defendant did he have any money to catch a cab. He said no, he was going home, let the cab take him home and pay the cab when he got home. So the story didn't seem right. So I took the defendant in for investigation'." *Mackie,* supra at 374, 320 A. 2d at 843.

school at 3:00 a.m. and placing a box in a waiting automobile. Upon further investigation, the appellant told the officer an incredible story. On those facts, our Supreme Court held that appellant's arrest was lawful. As was stated in *DeFleminque*, "the police officers would have had to shut their minds to a number of circumstances which indicated criminal activity to avoid making an arrest. This we will not ask them to do." 450 Pa. at 166, 299 A. 2d at 248.

Judgment of sentence affirmed.