Commonwealth *v.* Wascom, Appellant.

Submitted June 16, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Albert L. Becker,* for appellant.

*Barry H. Oxenburg, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

158

OPINION BY CERCONE, J., September 22, 1975:

This is an appeal from the lower court's imposition of sentence[1] upon appellant, William Wascom, following his conviction for burglary and criminal conspiracy after a non-jury trial. For the reasons set forth below, we affirm.

The events giving rise to this appeal may be summarized as follows:

On December 19, 1974, at approximately 12:35 a.m., a Philadelphia police officer was on patrol in a business district populated by clothing and appliance stores when he noticed the appellant and another man walking down the street together. The officer testified that he observed the appellant carrying a radio in his right hand and men's trousers draped over his left arm. The other man was carrying a portable television. The officer then stopped the two men and inquired where they were going. One of the men replied, "nowhere." They were then asked where they had received the articles they were carrying. Appellant responded that they were Christmas presents from friends and relatives. The officer then took the television from the one man and placed it on the hood of his patrol car. The officer stated that as he was about to relieve appellant of the trousers, but before he did so, he observed identification labels on the trousers such as those found on trousers in retail outlets, that is, labels indicating size, price, etc. Almost simultaneously with this observation, the officer noticed what appeared to be a knife protruding from the appellant's coat pocket. At this point both men were frisked for possible weapons. This frisk resulted in the seizure from appellant of a knife, and several pill containers with the name and address of one Jean Stefura on them. Following this frisk both men were advised of their constitutional rights. Appellant then admitted that they took "the stuff" from the address appearing on the pill containers.

---

1. Appellant was sentenced to concurrent terms of four years probation.

A detective testified that he interviewed the appellant at the station house and that appellant, after being warned of his *Miranda* rights and waiving them, admitted that he and his companion unlawfully took the items from the apartment of Jean Stefura. The appellant further admitted that he and his friend were on their way to a place where they could sell the articles for cash when they were stopped by the police.

On this appeal appellant argues, as he did in the court below, that the police had no lawful reason for stopping him on the street, and therefore the fruits of this alleged unlawful detention should have been suppressed. We disagree. It is our opinion that there were sufficient facts to justify an investigatory stop pursuant to *Terry v. Ohio,* 392 U. S. 1 (1968), and *Adams v. Williams,* 407 U. S. 143 (1972).

In *Terry,* the United States Supreme Court recognized that in view of the government's general interest in preventing and detecting crime, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U. S. at 22. In *Commonwealth v. Hicks,* 434 Pa. 153 (1969), the Pennsylvania Supreme Court interpreting *Terry* and *Sibron v. New York,* 392 U. S. 40 (1968), stated: "[E]ven if probable cause to arrest is absent, the police officer may still legitimately seize a person, such as Hicks was seized in this case, and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others, *if* the officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous." 434 Pa. at 158-159. Therefore, in order to lawfully "stop and frisk" a suspect the police

officer must be able to articulate facts which give rise to a reasonable belief that criminal activity may be afoot. *Commonwealth v. Jeffries*, 454 Pa. 320 (1973).

We find that the police officer in the instant case observed sufficient facts to justify a reasonable belief that the appellant might be engaged in a criminal enterprise. When the police officer observed two men walking down a street, in a business section of Philadelphia, at 12:30 in the morning, with each man's hands full with unwrapped commercial merchandise, the officer would have been derelict in his duties had he not investigated this suspicious set of circumstances.[2] Furthermore, it cannot be questioned that the police officer was justified in frisking the appellant when his investigation revealed the likelihood that appellant was in possession of a knife.

We have carefully examined the cases submitted by appellant in support of his position and we find them all to be distinguishable from the facts of the instant case. As the Supreme Court so accurately observed: "Street encounters between citizens and police officers are incredibly rich in diversity." *Terry*, supra at 13. Accordingly, we must review each case in light of its own unique facts and circumstances. *Commonwealth v. Mackie*, 456 Pa. 372, 376 (1974).

---

2. In *Adams v. Williams*, supra, the United States Supreme Court recognized the necessity for, and propriety of, the type of police action that occurred in the instant case, when the Court remarked that: "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response (citation omitted). A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." 407 U.S. at 145-146.

Since we have concluded that the stop and frisk was lawful, both appellant's statement to the arresting officer regarding where the articles were taken from, and the more complete statement he later gave to the interviewing detective, were properly admitted into evidence.

Judgment of sentence affirmed.