375 A.2d 69

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Eugene GALADYNA and Albert P. Lawrence, Appellees.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 1976.

Decided June 29, 1977.

Robert L. Eberhardt, Assistant District Attorney, Pittsburgh, for appellant.

John J. Dean, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

■ This is an appeal by the Commonwealth from the order of the lower court granting the appellee's motions to suppress evidence. The effect of the suppression order is to effectively preclude any further prosecution of the action by the Commonwealth. The order is, therefore, appealable by the Commonwealth. *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963). We reverse the order.

The facts are not in dispute in this case. On November 14, 1975, three plainclothes police officers were cruising in an area of Pittsburgh known as the Hill District, a high-

crime area. At approximately 9:10 p. m. the police officers observed the appellees and a sister of one of the appellees proceeding legally in a motor vehicle. The officers, recognizing the appellees, noted the license number of the car and the model and color of the auto. They did not stop the appellees at this time but went to a bar in the vicinity in order to investigate a complaint. After disposing of their business at the bar, the officers drove to an area which for three weeks prior to that time had been an area of concentrated citizens band radio thefts. At approximately 9:20 p. m. the officers spotted the appellee's car parked in a lawful manner on a narrow street approximately two blocks east of the place where they had originally been seen. The interior dome light of the car was on and Officer Smith, one of the police officers, was able to see that the occupants of the car were examining a citizen's band radio which was placed on the back rest of the front seat. Noting that the appellee's vehicle had no external CB antenna, the police officers decided to investigate. They pulled their car within five yards of the Lawrence vehicle so that both automobiles were facing each other. The officers got out of their vehicle. Officer Smith approached the automobile on the passenger side while the two other officers approached on the driver's side. As they were approaching the automobile, Officer Smith saw appellee Galadyna attempt to hide the CB by pushing it under a pile of clothing on the rear seat. He saw that a cut co-ax antenna was protruding from the clothing. Officer Smith asked Eugene Galadyna where he got the radio. The appellee responded "What radio?" The officer indicated that he was referring to the radio that was hidden under the clothing and then told Galadyna to hand it to him. The officers then contacted police radio by walkie-talkie, asked for assistance, and requested that they be notified of any report of a CB theft in their immediate area. Approximately three or four minutes later, the officers were notified that a nearby car had in fact been broken into and the description of the CB and the clothing given matched the

articles found in the appellee's vehicle. All parties were then placed under formal arrest. The appellees filed motions to suppress the evidence and a hearing was held on March 8, 1976, before Judge McGREGOR. At the conclusion of the hearing, and by order of court dated March 10, 1976, the lower court granted the motion to suppress stating that the police had no probable cause to believe criminal activity was afoot and therefore, had no right to be where they were. This Commonwealth appeal followed.

The issue thus presented on this appeal concerns the propriety of the investigatory stop that was made by the police officers. It is well-settled that the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Clearly, a police officer may stop a person for brief questioning and investigation, even if he has insufficient probable cause to make an arrest, where he has observed unusual and suspicious conduct by such person which may reasonably lead him to believe that criminal activity is afoot. *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973); *Commonwealth v. Pollard,* 450 Pa. 138, 299 A.2d 233 (1973); *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969). Indeed, it is well-settled that a police officer is justified in making a reasonable investigatory stop of a suspicious individual in order to determine his identity or to maintain the status quo temporarily while obtaining more information. *Commonwealth v. Ferraro,* 237 Pa.Super. 268, 273, 352 A.2d 548, 550 (1975), *citing Adams v. Williams,* 407 U.S. at 146, 92 S.Ct. at 1923; *see also Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Ellis,* 233 Pa.Super. 169, 335 A.2d 512 (1975). However, the police officer must be able to point to specific and articulable facts which taken together with rational inferences from those facts reason-

ably warranted the intrusion. *Commonwealth v. Ferraro,* supra, 237 Pa.Super. at 273, 352 A.2d at 550.

Turning to the facts of this case it is clear that the actions of the police were not violative of the appellee's Fourth Amendment rights.[1] The appellees were in a high-crime area after dark. The area was known to be one in which there recently had been a high concentration of citizen band radio thefts. The appellees themselves were seen in that area examining a CB radio in an automobile which had no external CB antenna. Under the circumstances we hold that it was proper for the police officers to approach the appellee's car and inquire as to their possession of the CB. And the fact that as Officer Smith was approaching the automobile he saw appellee Galadyna attempt to secrete the CB under the pile of clothes, clearly justified the investigatory stop. Unlike the cases in which police officers have "stopped" moving vehicles,[2] the appellees had already parked their automobile. It was not until the police

1. The appellees also raise a novel argument by contending that constitutional provisions prohibiting illegal searches and seizures in the Federal Constitution and Pennsylvania Constitution are not co-extensive. They argue that, unlike the Fourth Amendment in the U.S. Constitution, which distinguishes between the reasonableness standard and the warrant clause, *see Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Article I, Section 8 of the Pennsylvania Constitution by its express wording does not make such a distinction. They thus argue that the Pennsylvania Constitution prohibits *any* seizure of a person or thing without probable cause under *any* circumstances regardless of the broader interpretation which permits so-called "investigatory stops" under the Fourth Amendment to the Federal Constitution. This contention is patently without merit. From the myriad of cases that have been decided in this area of the law it is irrefutable that both the Fourth Amendment and Article I, Section 8 establish identical constitutional standards. *See, e. g., Commonwealth v. Quarles,* 229 Pa.Super. 363, 324 A.2d 452, 461 n.7 (1974); *Commonwealth v. Palms,* 141 Pa.Super. 430, 15 A.2d 481 (1940).

2. *See Commonwealth v. Murray,* 460 Pa. 53, 331 A.2d 414 (1975); *Commonwealth v. Boyer,* 455 Pa. 283, 314 A.2d 317 (1974); *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973); *Commonwealth v. Brown,* 232 Pa.Super. 463, 335 A.2d 782 (1975); *Commonwealth v. Nastari,* 232 Pa.Super. 405, 335 A.2d 468 (1975).

officers approached the window of the appellee's car, and after Officer Smith saw the attempted concealment of the CB, that the police officers effectively "seized" the appellees within the purview of the Fourth Amendment.[3] Such facts plainly warranted a further inquiry by the police officers.

We reject the appellee's contention that a police officer must have both a reasonable suspicion that criminal activity is afoot *and* must suspect that the person is armed and dangerous before a valid investigatory stop can be made. Such a contention is undoubtedly true in a situation where the police stop a person and frisk him, because the frisk itself is a search within the context of the Fourth Amendment. *See Terry v. Ohio,* supra. However, in a situation such as the one presented in the case at bar, there is no necessity that the police suspect that the person is armed and dangerous before a valid investigatory stop limited solely to questioning can be performed. In such a case, a reasonable suspicion that criminal activity is afoot is sufficient. *Commonwealth v. Pegram,* 450 Pa. 590, 301 A.2d 695 (1973); *Commonwealth v. Ferraro,* supra.

This case is not unlike the factual situations presented before our court in *Commonwealth v. Wascom,* 236 Pa.Super. 157, 344 A.2d 630 (1975) and *Commonwealth v. Ellis,* 233 Pa.Super. 169, 335 A.2d 512 (1975). In *Wascom* our Court, speaking through Judge CERCONE, affirmed an investigatory stop which was performed by a Philadelphia police officer shortly after midnight after that police officer noticed the defendant Wascom walking down a street carrying

3. Appellees argue that they were "seized" when the police officers parked their car. We disagree. The show of authority that is required in order for a seizure to be effected did not become reasonably apparent until Officer Smith arrived at the window and inquired about the CB radio. *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed. 889 (1968); *Commonwealth v. Hicks,* 434 Pa. 153, 157, 253 A.2d 276, 278 (1969); *Commonwealth v. Murray,* 460 Pa. 53, 331 A.2d 414, 417 (1975); *Commonwealth v. Boyer,* 223 Pa.Super. 196, 200, 297 A.2d 493, 494 (1972), *rev. on other grounds,* 455 Pa. 283, 314 A.2d 317 (1974); *In re Harvey,* 222 Pa.Super. 222, 225, 295 A.2d 93, 95 (1972).

a radio and men's trousers and another man carrying a portable television, in a business district containing clothing and appliance stores. Likewise, in *Ellis,* we held through Judge HOFFMAN that a police officer was justified in stopping a person who appeared to be carrying an adding machine at 2:00 a. m. in a high-crime area. *See also Commonwealth v. Ferraro,* supra. While it is true that each case must be reviewed under its own unique facts and circumstances, *Commonwealth v. Mackie,* 456 Pa. 372, 376, 320 A.2d 842, 844 (1974), both the *Ellis* and *Wascom* cases provide helpful guidance in resolving the issue in this case. As noted above, the area in which this case arose was a high-crime area [4] which for three weeks had been the scene of concentrated CB thefts. The appellees, who were known to the police, were stopped on a narrow street in the nighttime examining a CB radio in a car without an antenna. The police officers, while approaching the automobile on a public street, and before restricting the freedom of the appellees, noticed an attempted concealment of the CB radio. Surely, under *Ellis* and *Wascom* the police activities were justified, reasonable and illustrative of good police work. Therefore, we hold that the investigatory stop in this case was proper and, as such, the lower court erred in suppressing the evidence.

The order of the lower court suppressing the evidence is reversed and the case is remanded.

HOFFMAN and SPAETH, JJ., concur in the result.

---

4. Admittedly, the fact that these events occurred within a high crime area is not, by itself, a sufficient basis for conducting the investigatory stop. *See, Commonwealth v. Pollard,* 450 Pa. 138, 299 A.2d 233 (1973). However, this factor combined with the other factors enumerated in the text of this opinion, when viewed in their totality, justified the investigation by the police officers.