**STATE of Utah, Plaintiff and Appellee,**

v.

**Jeffrey W. ROCHELL, Defendant and Appellant.**

**No. 920309–CA.**

Court of Appeals of Utah.

April 1, 1993.

Robert L. Neeley (argued), Campbell and Neeley, Ogden, for defendant and appellant.

Jan Graham, State Atty. Gen., and Marian Decker (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BENCH, GARFF and JACKSON, JJ.

## OPINION

GARFF, Judge:

Appellant, Jeffrey W. Rochell, appeals from a conviction of possession of a controlled substance. We affirm.

### FACTS

The court's findings of fact are undisputed and are supported by the record.

Trooper David V. Maycock stopped Rochell for driving sixty-five miles per hour in a fifty-five mile per hour zone. Rochell exited his car and walked toward the police car, meeting Maycock halfway between the two vehicles. Rochell's passenger, Billy G. Miller, remained in the car. Maycock noticed the smell of alcohol on Rochell's breath. When asked whether he had been drinking, Rochell admitted that he had drunk one beer.

Maycock asked Rochell for his vehicle registration. As Rochell opened the passenger door of his car in order to get the registration from the glove box, an open container of alcohol fell out the door, spilling its contents onto the ground. Maycock picked up the cup, sniffed it, and confirmed it had contained alcohol.

Maycock then spoke with Miller and determined that he also had alcohol on his breath.

Maycock cited Rochell for speeding, for not wearing a seat belt, and for violation of the open container law. He asked both Rochell and Miller whether they had any weapons. Miller said no, emptied his pockets, and turned around to show that he had no weapons. Rochell hesitated in answering and did not offer the contents of his pockets.

Maycock noticed a bulge in Rochell's left front pocket. He believed the dimensions of the bulge were consistent with those of a knife or other weapon. Maycock tapped the bulge and asked Rochell what it was. In reply, Rochell reached into his pocket and pulled out some keys. However, the bulge was still present. Again, Maycock tapped it, determined it was still hard, and asked what it was. Rochell again reached into his pocket. This time, he pulled out

some coins, exposing a portion of a plastic bag.

Maycock asked Rochell what was in the bag. Rochell said "nothing," and pulled his hand holding the bag out of the pocket and placed it behind his back. A second officer, approaching from the rear, observed that the bag contained white powder, and seized it.

Maycock immediately arrested Rochell and administered his *Miranda* warnings. The officer inquired whether Rochell had "any other dope in the car." Rochell said "yes," and told Maycock where it was. Maycock then retrieved another bag of white powder from Rochell's car. Both bags were later determined to contain cocaine.

Rochell moved to suppress the evidence seized pursuant to the frisk and the vehicle search, arguing the frisk and search violated the Fourth Amendment of the federal constitution, and article I, section 14 of the Utah Constitution. After a hearing on the motion, the trial court denied the motion.

On April 15, 1992, Rochell plead guilty to the reduced offense of possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1992), on the condition that his right to appeal the order denying his motion to suppress be preserved. Rochell appeals the conviction.

REASONABLE SUSPICION TO DETAIN

Rochell agrees that Maycock justifiably stopped him for traveling sixty-five miles per hour in a fifty-five mile per hour zone. However, he claims Maycock exceeded his authority in detaining him in order to search him and his passenger.

Rochell is unclear as to precisely when he thought the detention became unreasonable. Thus, we first consider whether the searches of Rochell and his passenger were " 'strictly tied to and justified by' " the circumstances rendering the initial stop permissible. *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968) (quoting *Warden v. Hayden*, 387

U.S. 294, 310, 87 S.Ct. 1642, 1652, 18 L.Ed.2d 782 (1967) (Fortas, J., concurring)).

After an officer has lawfully stopped a vehicle for a traffic violation, the officer "may briefly detain the vehicle and its occupants while he examines the vehicle registration and the driver's license." *State v. Schlosser*, 774 P.2d 1132, 1135 (Utah 1989) (citing *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)). In addition, an officer may check for outstanding warrants "so long as it does not significantly extend the period of detention." *State v. Figueroa–Solorio*, 830 P.2d 276, 280 (Utah App.1992); *accord State v. Sepulveda*, 842 P.2d 913, 917 (Utah App.1992).

If the officer extends the detention beyond this point, we then consider whether the officer had additional reasonable suspicion to justify further detention. *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1878–79; *State v. Johnson*, 805 P.2d 761, 763 (Utah 1991); *State Godina–Luna*, 826 P.2d 652, 654–55 (Utah App.1992).

Here, Maycock appropriately requested the vehicle registration and Rochell's driver's license. When Rochell opened the passenger door to remove the registration from the glove box, the cup of alcohol fell out of the car, triggering further reasonable suspicion that Rochell and his passenger had one, and possibly two, open containers of alcohol, and that Rochell had been consuming alcohol while driving. *See* Utah Code Ann. § 41–6–44.20(1) & (2) (Supp.1992). Further, both Rochell and Miller had alcohol on their breath and Rochell had admitted to drinking.

We agree with the trial court that these articulable facts are sufficient to show probable cause that Rochell had an open container of alcohol in his vehicle and that he had been drinking while driving, thus justifying further detention. The trial court thus correctly concluded that Maycock justifiably detained Rochell.

REASONABLE SUSPICION TO FRISK

Rochell claims the court erred in concluding Maycock had reasonable suspicion that Rochell may be armed and dangerous, such

that Maycock could frisk him for weapons. Rochell does not challenge the court's findings, but rather claims the facts as found by the court do not support a finding of reasonable suspicion.[1]

Because the court made detailed findings, our task is to determine independently whether the facts support a conclusion of reasonable suspicion. *State v. Munsen,* 821 P.2d 13, 14–15 (Utah App.1991), *cert. denied,* 843 P.2d 516 (Utah 1992). *See State v. Mendoza,* 748 P.2d 181, 183 (Utah 1987); *State v. Carter,* 812 P.2d 460, 466 n. 6 (Utah App.1991), *cert. denied,* 836 P.2d 1383 (Utah 1992); *see also State v. Thurman,* 846 P.2d 1256, 1268–70 & n. 11 (Utah 1993) (admissibility of evidence usually an ultimate conclusion of law, although it embodies several subsidiary rulings); *United States v. Hernandez–Alvarado,* 891 F.2d 1414, 1416 (9th Cir.1989) (setting forth the generally held view that whether reasonable suspicion exists is a mixed question of fact and law, and the trial court's ultimate conclusion regarding reasonable suspicion is a legal conclusion which is reviewed de novo).

*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), established an exception to warrantless searches, including pat down searches. The frisk for dangerous weapons is "a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault [the officer]." *Id.* at 30, 88 S.Ct. at 1884–85. The officer must limit such frisks to a search for dangerous weapons. *Id.* at 16 n. 12, 88 S.Ct. at 1877 n. 12.

The officer must justify a pat down search by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880. These facts and inferences may be interpreted "in light of [the officer's] experience." *Id.* Still, the test for reasonable belief to frisk is objective. *See* 3 W. LaFave, *Search and Seizure* § 9.4(a) n. 23 (1987 & 1993 Supp.). Finally, the search must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry,* 392 U.S. at 29, 88 S.Ct. at 1884.

Utah has codified a *Terry* stop and frisk: "A peace officer who has stopped a person temporarily for questioning may frisk the person for a dangerous weapon if he reasonably believes he or any other person is in danger." Utah Code Ann. § 77–7–16 (1990).

The court made the following findings regarding the objective facts relied upon by Maycock to frisk Rochell: That Rochell had been speeding, he had been drinking and driving, his companion had also been drinking, Rochell had been driving with an open container of alcohol in the front seat of the car, Rochell had been speeding, that upon being stopped, Rochell left his vehicle and walked toward the officer, Rochell had a bulge in his pocket, the officer believed the bulge could have been a weapon,[2] and, when asked whether he had any weapons, Rochell "was hesitant in answering no."

Here, the findings are undisputed, and, when analyzed in light of Maycock's training and experience, they constitute "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880. Thus, Maycock justifiably frisked Rochell for a weapon. During this process, another officer saw a bag of cocaine in Rochell's hand and properly seized it.

---

1. Although Maycock had probable cause to arrest Rochell at the time the open container fell to the ground, Maycock instead chose to cite him for speeding and failure to wear seat belts. Had Maycock arrested Rochell, Maycock could have conducted a lawful, warrantless search of Rochell's person and vehicle as a search incident to arrest.

2. *See* LaFave, § 9.4(a) n. 44–45 (citing *People v. Allen,* 50 Cal.App.3d 896, 123 Cal.Rptr. 80, 83

(1975) (pat down appropriate where suspect was peering in car window in parking lot late at night and had bulge in his pocket consistent with weapon); *Commonwealth v. Wascom,* 236 Pa.Super. 157, 344 A.2d 630, 632 (1975) (police justified in frisking man walking downtown at 12:35 a.m. with tagged clothing and television set with bulge in pocket consistent with knife)).

## SEARCH INCIDENT TO ARREST

Rochell does not challenge the lawfulness of his warrantless arrest pursuant to Utah Code Ann. § 77–7–2(1) (1990). Thus, the issue is whether the search and seizure of cocaine from Rochell's car was lawful because it was incident to his arrest.

Once an officer has made "a lawful custodial arrest of the occupant of an automobile," the officer "may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). This search may include "the contents of any containers found within the passenger compartment." *Id.* at 460, 101 S.Ct. at 2864.

Here, cocaine on Rochell's person provided probable cause for arrest, independent of the contraband later seized from the vehicle. *See* Utah Code Ann. § 58–37–8(1) & (2) (Supp.1992). Also, Rochell and Miller were standing near the vehicle at the time of their arrest. While Rochell was not in the car at the time of his arrest, the car was "within [his] immediate control." *Id.* at 460, 101 S.Ct. at 2864. Thus, the court correctly concluded that the search of Rochell's vehicle was incident to his arrest, or that the search was pursuant to Rochell's consent.[3]

## CONCLUSION

In sum, the trial court correctly concluded that Officer Maycock legally (1) detained Rochell in order to search him and his passenger; (2) conducted a pat down search of Rochell's person; and (3) searched Rochell's vehicle. Affirmed.

BENCH, Judge (concurring in result):

■ I concur in affirming defendant's conviction. I write separately to point out that we can reverse the trial court's finding of reasonable suspicion only if we hold that the finding is against the clear weight of the evidence, or that the trial court violated a legal guideline in making the finding.

## STANDARD OF REVIEW

The lead opinion erroneously implies that we are reviewing the trial court's finding of reasonable suspicion for correctness.[1] The Utah Supreme Court has unequivocally stated that a trial court's ultimate finding of reasonable suspicion is to be given deference by a reviewing court. *State v. Mendoza,* 748 P.2d 181, 183 (Utah 1987). This deference is due to the trial court's advantaged position to determine the underlying facts and consider the totality of the circumstances.[2] A reviewing court may therefore disturb a trial court's finding of reasonable suspicion only if it is clearly erroneous. *Id.; State v. Menke,* 787 P.2d 537 (Utah App.1990). "A trial court's finding is clearly erroneous if it is without adequate evidentiary support in the record or if it is induced by an erroneous view of the law." *State v. Robinson,* 797 P.2d 431, 435 (Utah App. 1990) (citing *State v. Walk-*

---

**3.** Rochell claims he did not voluntarily consent to the search because the officers illegally exploited their prior illegal behavior when they seized cocaine from his vehicle. Because we determine that the detention and frisk were legal, the subsequent seizure was permissible.

Moreover, Rochell did not raise the issue of voluntariness of consent at his motion to suppress. He thus waives the issue. *State v. Carter,* 707 P.2d 656, 660–61 (Utah 1985); *State v. Price,* 827 P.2d 247, 248 n. 2 (Utah App.1992); *State v. Archambeau,* 820 P.2d 920, 922 (Utah App.1991).

**1.** The lead opinion makes the same error when discussing the trial court's finding of whether the officer had a reasonable belief of danger to justify the frisk. While this concurring opinion specifically discusses our review of the trial court's finding of reasonable suspicion, the same analysis applies to all ultimate findings by a trial court, including the trial court's finding in this case that the officer had a reasonable belief of danger.

**2.** When a trial court finds the underlying historical facts, it must often weigh the credibility of witnesses and evidence. This responsibility to weigh the evidence necessarily carries over into the trial court's review of the totality of the circumstances. Compelling evidence of one fact may cause the trial court to give that fact more weight than another fact that is supported by weaker evidence. If we attempt on appeal to reweigh the totality of the circumstances de novo, we lose the trial court's advantaged insight into the strength and persuasiveness of the evidence supporting each fact.

er, 743 P.2d 191, 193 (Utah 1987)). The clearly erroneous standard therefore has two possible prongs of attack: a legal prong, and an evidentiary prong. Consequently, our review depends on the nature of the error asserted by the appellant.

Legal guidelines circumscribe a trial court's traditionally broad factfinding discretion when the court finds an ultimate fact. These guidelines create a field of inquiry within which a trial court must make its finding. *State v. Barnhart,* 850 P.2d 473, 475–76 (Utah App.1993).[3] If a trial court's finding of ultimate fact is made in violation of these legal guidelines, it is "induced by an erroneous view of the law." *Walker,* 743 P.2d at 193 (quoting Wright & Miller, *Federal Practice and Procedure* § 2585 (1971)).[4] When an ultimate finding of fact is made in violation of a legal guideline, we correct it under a correction-of-error standard of review. *See State v. Thurman,* 846 P.2d 1256, 1271–72 (Utah 1993) (using correction-of-error standard allows appellate court to consider "legal content" of ultimate factual findings); *Barnhart,* at 475 (correction-of-error standard applies when appellant claims trial court improperly defined, or violated, the

pertinent legal guidelines when making its ultimate finding).

If, however, an appellant does not assert that the trial court has violated legal guidelines, a challenge to the ultimate finding is necessarily a challenge to the sufficiency of the evidence. For such evidentiary challenges, we do not apply the correction-of-error standard; rather, we defer to the trial court's ultimate finding unless it is "against the clear weight of the evidence." *Walker,* 743 P.2d at 193. "Absent a violation of legal guidelines, a trial court's finding of [reasonable suspicion] remains on the same level as any other underlying factual finding, and we defer." *Barnhart,* at 476. I therefore disagree with any suggestion in the lead opinion that we review the trial court's finding de novo and render the "correct" finding of reasonable suspicion.

Absent a claim that the trial court has violated legal guidelines, we do not review the trial court's findings for "correctness." Such an assertion improperly infers that we are free to substitute our judgment for that of the trial court. We do not have any such authority. When a question based upon the totality of the circumstances is reasonably debatable, we defer to the trial

---

**3.** When a legal principle guides the factfinder, the factfinder's task differs from the finding of a basic or historical fact because "the field of inquiry has limits defined, or capable of definition, by legal principle and judicial discussion." In other words, the factfinder is not allowed to wander about picking just any old fact it finds persuasive or conclusive; rather, the factfinder must remain within a specific field of inquiry defined by the law and consider factual issues required by the law to be considered.

An example may be helpful in understanding this concept. When a factfinder must determine whether a person has committed a crime, it is not allowed to decide arbitrarily what constitutes the offense. Rather, the factfinder must consider the elements of the crime as defined by the law. Furthermore, the factfinder is not allowed to base its decision on irrelevant factors such as the defendant's race, religion, prior bad acts, etc. The law therefore creates a field of inquiry within which the factfinder must function. The ultimate factual finding that the defendant did, or did not, commit the crime charged is a factual determination, "guided" by the law. To such findings we defer, so long as the

factfinder remained within a properly defined field of inquiry.
*State v. Richardson,* 843 P.2d 517, 521–22 & n. 3 (Utah App.1992) (Bench, P.J., concurring) (quoting *Hess v. Robinson,* 109 Utah 60, 163 P.2d 510, 515 (1945) (Wolfe, J. concurring)).

**4.** *See, e.g., State v. Robinson,* 797 P.2d 431, 436 (Utah App.1990) (correcting trial court's improper consideration of defendant's avoidance of eye contact); *State v. Talbot,* 792 P.2d 489, 493–94 (Utah App.1990) (deferring to trial court's finding of no reasonable suspicion—rejecting State's argument that defendant's flight from roadblock mandated a finding of reasonable suspicion); *State v. Holmes,* 774 P.2d 506, 508 (Utah App.1989) (deferring to trial court's finding of reasonable suspicion—rejecting defendant's claim that officer's subjective intent mandated a finding of no reasonable suspicion); *State v. Sery,* 758 P.2d 935, 945 (Utah App.1988) (correcting trial court's improper consideration of "officer's mere conclusion regarding defendant's nervousness, unsupported by relevant objective facts," because such conclusions "can have no weight in determining if [the officer] had a reasonable suspicion of criminal activity").

**486**

court's judgment. *Barnhart,* at 476. "The mere fact that on the same evidence the appellate court might have reached a different result does not justify it in setting the findings aside." *Walker,* 743 P.2d at 193 (quoting Wright & Miller, *Federal Practice and Procedure* § 2585 (1971)); *see also State v. Howard,* 544 P.2d 466, 468 (Utah 1975). "[O]ur sole duty is to determine whether the trial court's finding was permissible, not whether it was 'correct'...." *Richardson,* 843 P.2d at 525 n. 5 (Bench, P.J., concurring).

The supreme court's recent decision in *Thurman* clarifies that when legal challenges are made to a trial court's finding of ultimate fact, i.e., if an appellant claims that the trial court's finding was induced by an erroneous view of the law, we apply the correction-of-error standard. At 1271–72. This allows the appellate courts to determine substantive policy issues on a statewide basis. *Id. Thurman* does not, however, stand for the proposition that, absent a legal error, we are free to "correct" the trial court's ultimate finding whenever we, in our good judgment, would reach a different result. For an appellate court to do so on an ad hoc basis, without articulating any guiding legal principles, would not contribute to the development of the law. Rather, the substitution of our appellate judgment for a trial court's judgment would only create uncertainty and confusion as parties and courts attempt to guess why the trial court's judgment was reversed. "If we could simply substitute our judgment in each new case, then each new opinion would not 'narrow[] the universe of unsettled questions of appellate review.'" *Barnhart,* at 476 (quoting *Thurman,* at 1271–72).

█ If a trial court's finding of ultimate fact is made in compliance with the relevant legal guidelines, we have no cause to review its "correctness." *See Thurman,* at 1271–72; *Barnhart,* at 476. Therefore, absent a legal challenge, we may only review the finding to see if it is "against the

clear weight of the evidence." *Walker,* 743 P.2d at 193. Consequently, we do not make de novo findings of reasonable suspicion on appeal.

## ANALYSIS

█ In this case, the trial court was required to make its finding of reasonable suspicion in accordance with the following relevant legal guidelines: (1) the officer must have "specific, articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion [of criminal conduct];" (2) the trial court must consider the totality of the circumstances; and (3) the facts known to the officer must be considered in light of the officer's experience. *Mendoza,* 748 P.2d at 183.[5]

Since defendant has not shown how any of these legal guidelines, or any other guidelines, were violated by the trial court when it found that the officer had a reasonable suspicion of criminal activity, he has not shown how the trial court's finding was induced by an erroneous view of the law. Inasmuch as the trial court's finding was made within the proper field of inquiry, it was permissible under the legal prong of the clearly erroneous standard. Consequently, it may be disturbed only if it is contrary to the clear weight of the evidence, and defendant has made no such argument.

The trial court's finding of reasonable suspicion in this case is not clearly erroneous. I therefore concur in the result.

JACKSON, J., concurs with Judge Bench's opinion.

---

5. Inasmuch as the question of reasonable suspicion is fact sensitive, this list is clearly not exhaustive. Different legal guidelines may come into play when considering different factual situations.