**Commonwealth v. Hudach**

C.P. of Lawrence County, no. 228 of 2006, C.R.

*Diane D. Shaffer, assistant district attorney,* for Commonwealth.
*Harry O. Falls, public defender,* for defendant.

MOTTO, *P.J.,* February 15, 2007—Before the court for disposition is the defendant's motion to suppress evidence contending that the evidence obtained against him was the product of an unlawful stop of the vehicle in which defendant was a passenger, in violation of the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.

The dispositive issue is whether the stop of the vehicle in which the defendant was a passenger by police was based on reasonable suspicion that criminal activity was afoot.

On December 17, 2005, Pennsylvania State Police Trooper Tyler was on routine patrol in the area of Meadow Lane. Meadow Lane is a dead-end street on which are located approximately 15 houses. At the end of that street is a drive known as Tebay Lane, which leads to a home occupied by an elderly woman. The area is dark, unlit and wooded. There are no residences on Tebay Lane other than the residence of the elderly woman.

At approximately 7:05 p.m. Trooper Tyler noticed a red Grand Am parked at the end of Meadow Lane facing south, the opposite direction from which Trooper Tyler was approaching. The trooper also noticed that there were several individuals in the vehicle. As Trooper Tyler ap-

proached the vehicle in his police cruiser, the headlights of the vehicle became activated, and the vehicle then traveled east on Tebay Lane towards the residence of the elderly woman. At that point in time, Trooper Tyler effectuated a stop of the vehicle by flashing his red lights. Trooper Tyler testified the purpose of the stop was to find out the intentions of the persons in the vehicle.

Trooper Tyler walked to the stopped vehicle, whereupon he noticed the smell of marijuana and observed three individuals in the vehicle. He ordered the individuals out of the vehicle one at a time and patted them down. The reason for the pat down was out of concern for his safety given that he was alone in a dark, rural, wooded area. The defendant was located on the passenger side of the vehicle. When Trooper Tyler ordered the defendant out of the vehicle, he noticed defendant's hands were near the floorboards of the vehicle. When defendant was questioned as to why he had his hands down near the floorboard, he indicated that his pant leg had gotten caught on the seat. When the defendant exited the vehicle, the trooper noticed a large green marijuana pipe, approximately 15 inches long, in the area where the defendant's hands had been, near the floorboards under his seat. Trooper Tyler seized the marijuana pipe. After the defendant exited the vehicle Trooper Tyler did a pat down search of the defendant and located a hypodermic needle on his person. Trooper Tyler asked if the defendant had a medical use for the hypodermic needle, and the defendant responded that he did not, that he just carried one. The defendant was arrested and charged with two counts of possession of drug paraphernalia.

An analysis of the legality of the stop and subsequent search and seizure begins with a determination of the

type of encounter that took place between Trooper Tyler and the defendant. Case law has consistently identified three types of encounters between police officers and private citizens: (1) a mere encounter, (2) an investigative detention, and (3) a custodial detention. *Commonwealth v. Polo,* 563 Pa. 218, 224, 759 A.2d 372, 375 (2000). A mere encounter is the least restrictive and it is simply a request for information by the police officer; thus, this encounter does not need to be supported by any level of suspicion and the citizen has the option to stop the encounter or respond to the questioning. *Commonwealth v. Bennett,* 827 A.2d 469, 477 (Pa. Super. 2003). An investigative detention requires the person to stop and submit to a period of detention. The investigative detention is more intrusive than a mere encounter and must be justified by a reasonable suspicion that the person is involved in criminal activity. *Id.* The final type of encounter "is an arrest or 'custodial detention,' which must be supported by probable cause that an offense has been or is being committed." *Id.*

In determining whether the encounter is a mere encounter or an investigative detention, a court must decide, after looking at all of the circumstances surrounding the interaction between the police officer and the defendant, if a reasonable person would believe that they were free to decline the police officer's requests and terminate the interaction. *Commonwealth v. Reid,* 571 Pa. 1, 27, 811 A.2d 530, 545 (2002) (citing *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). There is no rigid formula for determining whether there is an investigative detention or not, but the following factors can be considered: "the nature, length and location of the detention; whether the suspect was transported against his or her will, how far and why;

whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions." *Bennett, supra* at 478.

A stop of motor vehicle by force is an investigative detention. *Commonwealth v. Clinton,* 905 A.2d 1026, 1030 (Pa. Super. 2006). Here, Trooper Tyler did in fact conduct an investigative detention. The trooper effectuated a stop by flashing his red lights, thus utilizing his authority as a police officer. A reasonable person under the circumstances would understand that he was being compelled to bring his vehicle to a stop. The passengers of the car were directed to exit the vehicle and were patted down for weapons. In looking at the entire circumstances surrounding the stop and the intrusiveness of the investigation it becomes obvious that Trooper Tyler was not inducing a mere encounter, but was initiating an investigative detention.

Where a police officer decides to stop and briefly detain a person in an investigative detention, the suspect's expectation of privacy is only minimally infringed upon; therefore, all that is required is that the officer have a reasonable suspicion that criminal activity is afoot. *Commonwealth v. Epps,* 415 Pa. Super. 231, 233, 608 A.2d 1095, 1096 (1992) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). For reasonable suspicion to exist a police officer must be able to point to specific and articulable facts and reasonable inferences that can be drawn from those facts in light of that officer's experience. *Commonwealth v. Cook,* 558 Pa. 50, 57, 735 A.2d 673, 677 (1999).

In a factually similar case, the Superior Court held an officer must observe unusual conduct that leads him to

reasonably conclude that criminal activity is afoot. *Commonwealth v. Williams,* 287 Pa. Super. 19, 28, 429 A.2d 698, 703 (1981). In *Williams,* an officer saw two cars parallel to each other and a person standing outside of the cars in an abandoned parking lot late at night. The police officer decided to approach the vehicle because of the late hour and a surge in burglaries in that area. He admitted to not seeing anything that would make him suspicious that criminal activity was afoot. When he began to question the people in the cars he found marijuana in the defendant's purse.

The *Williams* court reasoned that the officer did not receive any report of criminal activity in the area that evening and there was no conduct on the part of defendant to indicate that criminal activity was afoot. *Id.* Because the officer observed no activities that could lead him to believe that criminal activity was afoot, the *Williams* court held that the evidence in the case was rightfully suppressed. *Id.*

The facts of *Williams* are very similar to the facts currently before the court. Much like the abandoned parking lot in *Williams,* Tebay Lane is a quiet road that only leads to one place, the elderly woman's house at the end of the road. Furthermore, the activities in *Williams* may have been more suspicious than the activities in this case, because in *Williams* there was an additional car and a person standing outside of the car. Also, the location of the abandoned parking lot was in an area that had just experienced an increase in burglaries, and the officer observed the parked cars late at night.

Here, the activity that was observed by Trooper Tyler in this case is not the type of activity that was out of the ordinary. The vehicle was parked and later operating on

a public road in the early evening. Trooper Tyler stated that his reason for effectuating the stop was to discern the intentions of the persons in the vehicle. He had obvious concern for the safety of the elderly woman who lived at the end of Tebay Lane. However, despite this legitimate concern, a stop cannot be effectuated without facts which support a reasonable suspicion that criminal activity is afoot.

A police officer does not have to allow a crime to occur when the officer has observed unusual or suspicious conduct by a person which leads one to believe criminal action is afoot. *Commonwealth v. Galadyna,* 248 Pa. Super. 226, 230, 375 A.2d 69, 71 (1977). However, the police officer must be able to point to specific and articulable facts, taken together with rational inferences, which result in a reasonable suspicion that criminal activity is afoot, warranting the intrusion. *Id.* at 230-31, 375 A.2d at 72. In *Galadyna,* the police officers were called out to investigate a disturbance at a bar in a high crime area where many citizen band radios had been stolen. While the officers were in route to the bar, they recognized the defendant. After investigating the incident at the bar, the officer observed the defendant's lawfully parked car and noticed an interior dome light was on. When the police officers approached the car, the officers observed the occupants of the car examining a CB radio. The officers then exited their vehicle and noticed the defendant put the radio under a pile of clothing as if to conceal it. The court in *Galadyna* held that the seizure did not violate the defendant's Fourth Amendment rights because he was in a high crime area, at night, and the area was known for having a number of citizen band radio thefts. *Id.* at 231.

The case at bar is distinguishable from *Galadyna*. First, the area in *Galadyna* was a high crime area where many thefts had been reported; however, here there is no evidence that the Meadow Lane area of the stop is known for being a high crime area, or that crimes were reported in that area at about the time of the stop. Also, the defendants in *Galadyna* were observed by the police officers examining a CB radio while still inside of their vehicle. Here the trooper did not observe any occupant of the vehicle doing anything suspicious prior to the stop.

This case fails to exhibit the specific and articulable facts that are necessary to support an investigative detention. Although the vehicle was being operated on a street with one house in a secluded area, it was nevertheless being lawfully operated upon a public way. A police officer must be aware of facts that would support a reasonable suspicion that criminal activity was afoot before effectuating an investigative detention.

For the foregoing reasons, the court must grant the defendant's motion to suppress evidence.

## ORDER

And now, February 15, 2007, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered, adjudged and decreed that the defendant's motion to suppress is granted and all the evidence obtained by the police as the result of the stop of the vehicle in which defendant was a passenger is suppressed and shall not be used against defendant in any proceeding in this case.